**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

KEVIN GOULD,

     Plaintiff,

v.                             Case No.: 1:19-cv-00382-WJ-SCY

MICHAEL WYSE,
WYSE ADVISORS, LLC,
DW PARTNERS, and
CRYSTAL FINANCIAL,

     Defendants.

**PLAINTIFF'S CONSOLIDATED RESPONSE TO**
**DEFENDANTS' RULE 12 MOTIONS TO DISMISS**

Plaintiff Kevin Gould, through counsel, hereby responds to the separately filed Motions to Dismiss filed by Defendants Michael Wyse and Wyse Advisors, LLC, DW Partners, and Crystal Financial in this one, consolidate pleading, and respectfully requests that the Court deny the motions to dismiss.

## I.    Introduction

In attempting to evade the reach of this Court's jurisdiction, Defendants ignore critical facts demonstrating their numerous and purposeful contacts with the state of New Mexico. Their extensive contacts include, but are not limited to: (1) Michael Wyse of Wyse Advisors, LLC personally travelling to Albuquerque, New Mexico on multiple occasions during the timeframe at issue in this case and meeting with Plaintiff on issues directly related to the subject matter of this lawsuit, as well as obscuring his role for the benefit of the Senior Secured Lenders ("SSLs"), (2) John Buck of DW Partners personally travelling to Albuquerque, New Mexico on multiple occasions during the timeframe at issue and engaging with Plaintiff on issues directly related to the subject matter of this lawsuit, (3) extensive communication between Michael Wyse and

Plaintiff regarding not only the business and debt of Eclipse but also Plaintiff's compensation and bonuses, communication which occurred by email, text and telephone while Plaintiff was living in New Mexico and in person at the Eclipse/ONE Aviation headquarters, Scalo Restaurant, and other locations in Albuquerque, (4) extensive communication between John Buck, Joel Biran, a Managing Principal at DW Partners, and Robert Clark, a Partner at DW Partners and Plaintiff regarding not only the operations and debt of Eclipse but also Plaintiff's compensation and bonuses, communication which occurred by email, text and telephone while Plaintiff was living in New Mexico and in person at the Eclipse/ONE Aviation headquarters, Scalo Restaurant, and other locations in Albuquerque, (5) extensive communication between Matthew Governali, Managing Director at Crystal Financial, and Plaintiff regarding not only the business and debt of Eclipse/ONE Aviation but also Plaintiff's compensation and bonuses, communication which occurred by email, text and telephone while Plaintiff was living in New Mexico, (6) the signing of an employment contract, the terms of which Plaintiff negotiated with Michael Wyse and John Buck of DW partners, and which Crystal Financial ratified and accepted, selecting New Mexico as the governing law of the contract and New Mexico state and federal courts as the exclusive jurisdiction to resolve disputes, and (7) other actions taken by all three Defendants purposefully targeting New Mexico in order to control, manage, and oversee their financial interest in the operations and debt of Eclipse and ONE Aviation. Jurisdiction over Defendants falls well within the constitutional parameters over non-resident defendants who have purposefully availed themselves of the benefits and protections of New Mexico, and the Court should deny Defendants' motion to dismiss for lack of personal jurisdiction.

Furthermore, Defendants move to dismiss each of Mr. Gould's legal claims for failure to state a claim under Rule 12(b)(6) under the Federal Rules of Civil Procedure. Defendants' Rule 12(b)(6) arguments likewise fail and should be rejected.

## II.    Background of Plaintiff's Claims

Plaintiff Kevin Gould has a wealth of experience in rescuing distressed or failing businesses, and it was that expertise for which he was recruited to serve as the Chief Operating Officer and functional Chief Executive Officer of Eclipse Aviation. Complaint For Damages ("Complaint") ¶¶ 9, 10, attached as Ex. A to Notice of Removal, Doc. 1-1. DW Partners, through its agent and employee John Buck; Crystal Financial, through its managing director, Matt Governali; and Wyse Advisors, LLC, through Michael Wyse, lured Mr. Gould into moving to Albuquerque and accepting a position as the COO of ONE Aviation, the parent company of Eclipse Aviation, through financial negotiations and promises of a large success fee or bonus. Complaint at ¶¶ 13-24; Exhibit 1, Declaration of Kevin Gould (June 7, 2021) at

¶ 16(c), (r), (u)-(x), (eee), (iii), (lll)-(mmm), (ooo)-(ppp), (ttt)-(vvv), (xxx), (bbbbb), (eeeee), (iiiii).

Initially, Crystal Financial engaged Mr. Gould as a consultant to help ONE Aviation prepare for bankruptcy and turn its finances around, and Crystal began to act as the agent of both Crystal and DW. Compl. ¶ 10. Defendants sought for Mr. Gould to become an executive officer of ONE Aviation, but Mr. Gould was worried about being directly employed by ONE Aviation instead of the SSLs, especially should ONE Aviation declare bankruptcy. Compl. ¶¶ 14, 15; Gould Decl. ¶ 9, 16(r),

Eventually, based on the assurances of all Defendants, Mr. Gould signed a contract with ONE Aviation specifying New Mexico as the governing law and New Mexico state and federal courts as the "exclusive jurisdiction[s]" over disputes. *See* Ex. B-2 to Notice of Removal (4/24/19),

ECF 1-2. Critically, "all parties understood that Plaintiff's role was to support efforts to secure a buyer for the loans held by the senior secured lenders, for the benefit of the senior secured lenders." Compl. ¶ 21. Mr. Gould signed the contract because Michael Wyse, John Buck, and Matt Governali made promises on behalf of both Crystal Financial and DW Partners, including that Mr. Gould would have complete control of the company, that his salary would be $330,000 per year, that his "success fee" would be based on a transaction grid, and that payment of the success fee was to be made by DW Partners and Crystal Financial. Compl. ¶¶16-19, 24; Gould Decl. 9, 16(c), (r), (u)-(w), (x); *see also* ECF 1-2 ¶ 3(a) & (b) (stating that the "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders"). Mr. Wyse and Mr. Buck were the most actively involved in negotiating the terms of Mr. Gould's employment. Compl. ¶¶ 16-19.

Mr. Wyse acted in multiple capacities, not only as a representative of the SSLs but also as an officer/director of ONE Aviation and Eclipse. Compl. ¶ 25, Gould Decl. ¶ 10. The role Mr. Wyse was playing at any one time was confusing, and he engaged in a pattern and practice of obscuring his role for the benefit of himself and the SSLs. Compl. ¶¶ 25-26, Gould Decl ¶ 11. Acting in his multiple, obscured roles on behalf of DW Partners, Crystal, ONE Aviation, and himself, Mr. Wyse, along with John Buck, Joel Biran, and other representatives of DW Partners, continued to direct Mr. Gould's conduct and operations of the Albuquerque business, and they also continued to assure Mr. Gould that the SSLs would pay his bonus. They took an active role in the operations of the company, including managing cash flow and the budget, Gould Decl. ¶¶ 16(l), (ee), (ii), (ss), (uu)-(xx), strategizing and maneuvering towards and through bankruptcy, *id.* ¶¶ 16(f), (i), (m), (y), (ppp), (sss)-(ttt), (www), (yyy), reducing staff, *id.* ¶¶ 16(h)-(i), (vvvv), hiring janitors, *id.* ¶ 16(eee), checking on the status of airplane sales or directing sales, *id.* ¶ 16(aaa),

negotiating with the City of Albuquerque regarding arrearages, *id.* ¶ 16(kkk), maintaining or eliminating company programs or sub-operations, *id.* ¶¶ 16(aaa), (rrr), (xxx), and attempting to block the sale of an aircraft seized by the Bernalillo County Sheriff's Office. *Id.* ¶ 16(cccc).

Employees, agents, or representatives of Defendants also reached into New Mexico, both in person and by telephone, text message, and email, to negotiate, placate, reassure, or otherwise discuss with Mr. Gould the payment of his bonus. For example:

- On February 14, 2018, at 10:30am, Mr. Wyse spoke to Mr. Gould by telephone about getting Mr. Gould's bonus paid. Mr. Wyse assured Mr. Gould that John Buck of DW Partners had agreed to its payment. Gould Decl. ¶ 16(iii).

- On February 20, 2018, Mr. Wyse texted Mr. Gould that he had spoken with Mr. Buck of DW about getting Mr. Gould's transaction bonus paid, and that Mr. Buck had relayed that Mr. Gould should not worry. Mr. Wyse also said he had spoken with the company attorney and they would work it out. *Id.* ¶ 16(kkk).

- On March 1, 2018, at 1:53pm, Mr. Wyse spoke with Mr. Gould by telephone and assured Gould that Wyse would take care of his bonus being paid. *Id.* 16(lll).

- On March 2, 2018, at 8:00am, Mr. Buck spoke with Mr. Gould by phone regarding the calculation of his bonus amount and suggested different methods by which it might be paid. Gould Decl. *Id.* ¶ 16(nnn).

- On March 6, 2018, Mr. Wyse had a phone call with Mr. Gould during which they discussed the process by which a bankruptcy filing would occur and Mr. Wyse indicated he wanted Mr. Gould to act as the representative for the company in the bankruptcy proceedings. Mr. Wyse also stated that Mr. Gould's bonus could be paid as a carve out in the Debtor-In-Possession (DIP) financing. *Id.* ¶16(ooo).

- On March 8, 2018, at 3:33pm, Mr. Wyse texted Mr. Gould and suggested that company lawyer Todd Schwartz should move Mr. Gould's employment agreement from ONE Aviation to Eclipse, which he had said was important to facilitate my bonus during the bankruptcy proceedings. *Id.* ¶16(sss).

- On March 12, 2018, at 8:00am, Mr. Wyse held a meeting of the Board of Directors, company attorneys, and an investment banker to discuss the disagreement between the SSL's regarding bankruptcy and payment of Mr. Gould's bonus, which was to come out of the payment to DW Partners but would be shown on the budget as a $1.473 million employee-related "Success Fee" payment in the debtor-in-possession (DIP) budget. *Id.* ¶ 16(ttt).

- On March 12, 2018, at 10:00am, Mr. Wyse hosted a telephonic meeting with John Buck, Joel Biran, Huan Wang, Kieran McGarrell, Vin Batra, and Jon Stapleton regarding the cash crunch at the company and what would be acceptable as a DIP budget. The parties to the call disagreed over laying off employees and acknowledged that payment of Mr. Gould's bonus needed to be addressed. *Id.* ¶ 16(uuu).

- On March 16, 2018, at 2:00pm, Mr. Gould spoke with Joel Biran, Michael Wyse, Kieran McGarrell, and John Stapleton by telephone. Mr. Biran directed Mr. Gould to slim down the Garmin program, and all five discussed how Mr. Gould's $1.4 million success fee payment would be calculated in the event of a credit bid. *Id*. ¶ 16(www).

- On April 23, 2018, at 11:55am, Mr. Buck told Mr. Gould over the phone that DW was "in it for the duration" and that "we and you [meaning Buck and Gould] have a chance to make a lot of money." Mr. Buck indicated he wanted Gould to be the company representative in the first day motions of the bankruptcy proceedings. *Id.* ¶ 16(mmmm).

- On June 22, 2018, at 8:00am, Mr. Gould had a phone call with Mr. Buck regarding the payment of his bonus. Mr. Buck stated he agreed with the original intent of Mr. Gould's employment agreement that, as the SSLs realized more gain on their investment, they would share those gains with Mr. Gould. Mr. Buck stated the key to Mr. Gould getting paid was Mike Wyse, and that Mr. Gould should convince Mr. Wyse that Mr. Gould was willing to quit unless he was paid. *Id*. ¶ 16(aaaaa).

- On July 12, 2018, at 6:30am, Mr. Gould had a phone call with Mr. Wyse regarding payment of his bonus. Section 3(a) of Mr. Gould's employment contract states, "The Bonuses shall be based on all receipts of cash by the Senior Secured Lenders." A cash buyout of the SSLs is what Mr. Wyse, Mr. Buck, and Mr. Gould envisioned when they negotiated Mr. Gould's agreement. As circumstances developed over the ensuing 8 months, it appears CitiKing paid cash for half of the 50% debt position and issued some form of note for the second half of that 50% debt position. Mr. Gould asked Mr. Wyse how they were going to handle the matter, and Mr. Wyse's response was that Mr. Gould should be paid on the full consideration (meaning the cash plus the note) because at the time Mr. Gould's contract was negotiated, the parties could not have foreseen the debt purchase being structured in that particular way. Mr. Wyse told Mr. Gould that he had spoken with the company attorneys about the best way to get Mr. Gould's bonus paid. *Id.* ¶ 16(eeeee).

All Defendants systematically engaged in ONE Aviation or Eclipse Aerospace business to such a degree that legitimately none can be surprised to be hauled into court in New Mexico.

### III.     Relevant Law & Standards Regarding Personal Jurisdiction

Defendants' recitation of the law regarding personal jurisdiction is generally accurate, but some clarification is necessary.

First, although he bears the burden, Mr. Gould "need only make a *prima facie* showing of personal jurisdiction to defeat a rule 12(b)(2) motion to dismiss." *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 385 (D.N.M. 2015) (citing *OMI Holdings*, *Inc. v. Royal Ins. Of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998)). "[I]n the preliminary stages of litigation, the plaintiff's burden is light." *AST Sports Science, Inc. v. CLF Distr. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). A *prima facie* showing can be made "by demonstrating, by affidavit or other written materials, facts, that, if true, would support the exercise of personal jurisdiction over defendant." *Fabara*, 308 F.R.D. at 385 (internal quotations and citation omitted). Factual disputes at this initial stage of litigation must be resolved in Mr. Gould's favor. *Hargrave v. Concord Moon*, 2008 U.S. App. LEXIS 11365 (10th Cir. May 27, 2008) (unpublished decision); *OMI Holdings, Inc.*, 149 F.3d at 1091.

Second, the underlying purpose of the personal jurisdiction analysis is to avoid unfairness and surprise—i.e. to honor the due process rights of defendants "in not being subject to the binding judgments of a forum with which they have established no meaningful contacts, ties, or relations." *OMI Holdings*, 149 F.3d at 1090 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)) (internal quotation marks omitted). No such surprise or unfairness exists here, nor can it be reasonably claimed. As the Court is aware, personal jurisdiction does not turn on "mechanical tests," *Randow Travel Serv. V. Hilton Hotels Corp.*, 896 F.2d 1233, 1237 (10th Cir. 1990) (quoting *Burger King*, 471 U.S. at 478-79), and instead must be evaluated on a case-by-case basis. *Burger King*, 471 U.S. at 486 ("'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice'") (quoting *Kulko v.*

*California Superior Court,* 436 U.S., at 92, 98 S.Ct., at 1696–1697); *Sublett v. Wallin*, 2004-NMCA-89, ¶ 33, 94 P.3d 845 (emphasizing that whether a defendant's conduct is within the New Mexico long-arm statute is determined on a case-by-case basis).

To satisfy Due Process requirements, a defendant must have (1) sufficient minimum contacts with the forum state so that they "should reasonably anticipate being haled into court there," *Burger King*, 471 U.S. at 473-76, and (2) maintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). There are two ways to establish "minimum contacts"—either via general or specific jurisdiction. *Trierwieler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523. 1532-33 (10th Cir. 1996). Although Plaintiff does not concede a lack of general jurisdiction, and requests leave of the Court to conduct jurisdictional discovery, at the present Plaintiff asserts that the Court maintains specific personal jurisdiction over all defendants.

Under the umbrella of specific jurisdiction, "[t]he party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." *Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159, 1166 (10th Cir. 2011). Because New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," *Tercero v. Roman Catholic Diocese,* 2002–NMSC–018, ¶ 6, 48 P.3d 50, the Court "need not conduct a statutory analysis apart from the due process analysis." *Marcus Food Co.,* 671 F.3d at 1166 (internal quotation marks omitted).

### A.  There is Specific Jurisdiction Over Defendants Plaintiff's Tort Claims

Mr. Gould asserts two tort claims: fraud and negligent misrepresentation. *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 17, 144 P.3d 111, 117 ("Fraud is a tort");

*Davis v. Bd. of Cty. Comm'rs of Dona Ana Cty.*, 1999-NMCA-110, ¶ 34, 987 P.2d 1172, 1182 ("Negligent misrepresentation is a tort determined by the general principles of the law of negligence.").

To determine whether a defendant has minimum contacts with the forum state in the tort context, courts consider "whether the nonresident defendant 'purposefully directed' its activities at the forum state...." *Strobel v. Rusch,* 364 F. Supp. 3d 1270, 1279 (D.N.M. 2019) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (citations omitted)). A defendant has "purposefully directed" its activities at New Mexico or its residents when it has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. *Dudnikov*, 514 F.3d at 1072 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

The crux of Mr. Gould's fraud and negligent misrepresentation claims are, at least for the purposes of jurisdiction, unitary: that Defendants induced Mr. Gould to enter into the contract he did with ONE Aviation under the intentionally false or reckless auspices that the Senior Secured Lenders would guarantee payment of his bonus, that Defendants continued to reassure Mr. Gould that he would be paid by the SSLs throughout the course of his time in Albuquerque, that Defendants acted as they did in order to use Mr. Gould's specialized skills to rescue the company and ensure their own financial gain, that Mr. Gould relied on Defendants' misrepresentations to his detriment, and that no transaction bonus has been paid to Mr. Gould to date. *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 1991-NMSC-097, ¶ 15, 820 P.2d 1323 ("A successful fraud claim must prove a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act upon it, and upon which the

other party relies to his detriment."); *Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642 ("To recover under a theory of negligent misrepresentation, a plaintiff must show that: (1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff.").

Here, Mr. Wyse, in his blurred role as Chairman of the Board and representative of DW Partners and Crystal Financial, Mr. Buck (DW Partners), and Mr. Biran (DW Partners) actively participated in the organization and management of ONE Aviation and Mr. Gould's activities "via telephone, mail, and internet." *Strobel*, 364 F. Supp. 3d at 1282; *e.g.* Gould Decl. ¶ 16(f), (i)-(x), (ee)-(gg), (kk). Those communications involved significant discussion of Mr. Gould's transaction bonus, how it would be paid, and repeated reassurances regarding follow through. Gould Decl. ¶¶ 8-13, 16(iii)-(lll), (nnn)-(ooo), (sss)-(uuu), (www), (mmmm), (aaaaa), (eeeee).

Mr. Buck (DW Partners) and Mr. Wyse also traveled to New Mexico to meet with Plaintiff for the purposes of overseeing the business and their investment, to issue directives regarding how to operate the business to maximize Defendants' profits, and to reassure Mr. Gould about his transaction bonus and keep him working. *See Strobel*, 364 F. Supp. 3d at 1279 (finding personal jurisdiction over out-of-state defendant where defendant traveled to New Mexico, participated in the organization and management of the business—in person and by phone and email, and availed itself of the advantages of transacting business in New Mexico); Gould Decl. ¶¶ 10 (in person Albuquerque meetings with Wyse and Gould), 12 (in person Albuquerque meeting with Buck and Gould), 16(a), (gg), (pp.).

Like the telephone, text message, and email communications, their in-person meetings in Albuquerque involved significant discussion of Mr. Gould's transaction bonus, how it would be

paid, and repeated reassurances regarding follow through. The in-person conduct of Wyse and Buck in New Mexico demonstrate actual participation in the commission of the alleged business tort, and "demonstrate an intent to do business in New Mexico and with a New Mexico company." *Santa Fe Tech.*, 42 P.3d at 1231 (quoting *Far W. Capital*, 46 F.3d at 1079) (internal quotation marks and citation omitted). Defendant Wyse's specific argument that he cannot be haled into court on the basis of the corporations' conduct likewise fails, as Plaintiff asserts that the Court maintains personal jurisdiction over Mr. Wyse on the basis of his "individual contacts with the forum state." *Ten Mile Indus. v. W. Plains Serv. Co.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

Plaintiff asserts that sufficient contacts also exist supporting personal jurisdiction over Crystal Financial. Specifically:

- Crystal agreed to act as agent of both Crystal and DW and exercised its power of "Cash Dominion" over ONE Aviation. Gould Decl. ¶ 5.

- Mr. Governali recruited Mr. Gould for the position and engaged in numerous discussions regarding how to run the business. *Id.* ¶ 7.

- Crystal Financial knew of Mr. Gould's concerns, wanted to keep the company as attractive as possible to maximize profit, acceded to Mr. Gould's employment terms, and maintained control over a majority of the seats on the board. *Id.* ¶¶ 9, 16(t).

- Crystal participated in the negotiations of Mr. Gould's bonus and weighted it towards a "success fee." *Id.* ¶ 9.

- Mr. Wyse, acting in a blurred role, and Mr. Buck reassured Mr. Gould that Mr. Wyse, DW Partners, and Crystal would "take care" of Mr. Gould. *Id.* ¶ 10.

- Crystal Financial executed a confidentiality contract with Mr. Gould. *Id.* ¶ 16(b).

- Crystal Financial executed a consulting contract with Mr. Gould negotiated by DW and Crystal. Gould Decl. *Id.* ¶ 16(e), (g).

- Mr. Gould spoke with an individual employed by Crystal to discuss ONE Aviation's post-auction plan and strategy. *Id.* ¶ 16(k).

- Matt Governali participated in budget discussions. *Id.* ¶ 16(n).

- Crystal participated in steering ONE Aviation towards bankruptcy. *Id.* ¶ 16(y).

- Crystal was involved in funding ONE Aviation operations as an agent for the SSLs. *Id.* ¶ 16(dd)-(ee).

Mr. Gould strongly contends that Crystal took intentional action aimed at New Mexico with the knowledge that the brunt of any injury would be felt in New Mexico by Mr. Gould. *Dudnikov* 514 F.3d at 1072. There are more than sufficient contacts to establish a prima facie case for personal jurisdiction over defendants for Mr. Gould's tort claims. At the bare minimum, Mr. Gould has asserted reasonable allegations sufficient basis to support jurisdictional discovery against Crystal—as well as Wyse, Wyse Advisors, and DW Partners, for that matter.[1]

### B. There is Specific Jurisdiction Over Defendants Under Plaintiff's Contract and Unjust Enrichment Claims

Mr. Gould asserts three claims that fall under the umbrella of "contract claims" for the purposes of personal jurisdiction: (1) breach of contract, (2) breach of the covenant of good faith

---

[1] "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *McManemy v. Roman Cath. Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013) (quoting *Sizova v. Nat'l Inst. of Standards and Tech.,* 282 F.3d 1320, 1326 (10th Cir.2002) (internal quotations omitted)). A plaintiff must merely "provide some reasonable allegations on which to base the pursuit of discovery." *McManemy*, 2 F. Supp. 3d at 1195.

and fair dealing, and (3) unjust enrichment.[2]  In contract cases, "courts sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. "Although agreements alone are likely to be insufficient to establish minimum contacts, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (citations and internal quotation marks omitted). The relevant factors for assessing minimum contacts in contract cases include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (quoting *Burger King*, 471 U.S. at 479)). In *Benton*, the Tenth Circuit held the defendant had purposefully availed itself of the forum state via a continuing business relationship, which included "prior negotiations" and "contemplated future consequences," where the defendant made decisions for the company in the forum state, and the dispute concerned "the conduct of the parties in redefining their business relationship." *Benton*, 375 F.3d at 1077.

The core facts behind Mr. Gould's contract claims are largely the same to those related to his tort claims, *supra*. As detailed above and in Mr. Gould's Declaration, both Mr. Wyse, acting in in his blurred roles as Chairman of the Board, an individual, and representative of DW Partners and Crystal Financial, Mr. Buck (DW Partners), and Mr. Biran (DW Partners) actively participated in the organization and management of ONE Aviation and Mr. Gould's activities. Gould Decl. at ¶¶ 16(f), (i)-(x), (ee)-(gg), (kk). Those communications involved significant

---

[2] Although unjust enrichment is frequently distinguished from tort and contract theories of recovery, New Mexico courts have concluded that "unjust enrichment is much like a contract claim" in other contexts. *Heimann v. Kinder-Morgan CO2 Co., L.P.,* 2006-NMCA-127, ¶ 20, 144 P.3d 111.

discussion of Mr. Gould's transaction bonus, how it would be paid, and repeated reassurances regarding follow through. *Id.* ¶¶ 8-13, 16(iii)-(lll), (nnn)-(ooo), (sss)-(uuu), (www), (mmmm), (aaaaa), (eeeee). The communications occurred both electronically and in person, as both Mr. Wyse and Mr. Buck traveled to New Mexico to check on their investment, oversee business operations, direct Mr. Gould's work, and reassure Mr. Gould about his transaction bonus and keep him working. *Id.* ¶¶ 10 (in person Albuquerque meetings with Wyse and Gould), 12 (in person Albuquerque meeting with Buck and Gould), 16(a), (gg), (pp.). Defendants clearly understood that the consequences of their actions would be felt in New Mexico and even expected disputes related to Mr. Gould's employment to be resolved here. *See* Doc. 1-2, Ex. B-2. Likewise, all Defendants benefitted from New Mexico's laws and governmental regulation, as well as Mr. Gould's efforts with New Mexico governmental entities. *E.g.* Gould Decl. ¶¶ 16(l), (jjjjj), 17(l).

With respect to Crystal Financial, Plaintiff contends that Crystal was aware of Mr. Gould's terms of employment and concerns regarding payment of his transaction bonus, *id.* ¶ 9, 16(t), took actions in New Mexico to further its aims, including controlling and funding operations and exercising cash dominion, *id.* ¶ 5, 16(dd)-(ee), (n), participated in the negotiation of Mr. Gould's terms of employment, *id.* ¶ 9, executed confidentiality and consulting agreements with Mr. Gould, *id.* ¶¶ 16(b), (e), (g), actively steered ONE Aviation and its New Mexico operations into bankruptcy, *id* ¶ 16(y), and benefitted from Mr. Gould's actions. *Id.* ¶¶ 14, 16(ll). Those contacts are sufficient to establish minimum contacts with New Mexico. *See Santa Fe Techs., Inc*, 2002-NMCA-030, ¶¶ 23-25 (finding jurisdiction where out of state company had "only a single, physical contact with New Mexico," but took deliberate, not random or fortuitous, actions to do business with a New Mexico company aimed at furthering a potentially lucrative business relationship).

Furthermore, Mr. Gould has asserted that Mr. Wyse was acting as an agent of Crystal, and New Mexico law recognizes agency for the purposes of personal jurisdiction even where the agent may not have authority to bind the principal contractually. *See Santa Fe Techs., Inc.*, 2002-NMCA-030, ¶ 25-27 (personal jurisdiction over officers where agent was sent to New Mexico to facilitate negotiations, even if agent only had authority to transmit or receive information and not bind principals contractually).

### C.  Alternatively, Plaintiff Requests Jurisdictional Discovery

Plaintiff has outlined a sufficient basis for a *prima facie* showing of personal jurisdiction over Defendants, and the Court has before it sufficient facts upon which to base a decision to deny Defendant's motion to dismiss for lack of jurisdiction. Nonetheless, to the extent the Court determines that additional facts are necessary to establish personal jurisdiction over any Defendant, Plaintiff requests leave of the Court to conduct discovery limited to the personal jurisdiction issue. *See Purple Onion Foods v. Blue Moose of Boulder*, 45 F. Supp. 2d 1255, 1257 (D.N.M. 1999) (Black, J.); *see also See Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'") (citations omitted)). Moreover, should the Court determine that such discovery is proper and warranted at this time, Plaintiff requests that it reserve its right for an evidentiary hearing on the personal jurisdiction issue until jurisdictional discovery has concluded.

### IV.     Relevant Law Regarding Failure to State a Claim under Rule 12(b)(6)

To survive a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain sufficient facts which, if true, state a claim for

relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not set forth detailed factual allegations, and all *factual* allegations must be accepted as true. *Iqbal*, 556 U.S. at 678. In short, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

### A. Mr. Gould's Complaint States Claims for Breach of Contract

Defendants all move to dismiss Mr. Gould's breach of contract claim for the same reason: Defendants claim they are not parties to the contract. ECF 21-1 at 8-10; ECF 20 at 6-7; ECF 22 at 7-9. However, Defendants' assertions are based on an erroneous understanding of New Mexico contract law, as well as of Mr. Gould's claims.

New Mexico courts do not rely "solely on the face or the 'four corners' of the document," or contract. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 9, 845 P.2d 1232. Instead, "New Mexico law allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity." *Mark V*, 1993-NMSC-001, ¶ 12. "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity." *Id.* Under those circumstances, "the court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear." *Id.*

The elements of breach of contract in New Mexico are: (1) existence of the contract, (2) breach of the contract, (3) causation, and (4) damages. *Ormrod v. Hubbard Broad., Inc.*, 328 F. Supp. 3d 1215, 1227 (D.N.M. 2018). Mr. Gould specifically asserts in his Complaint that both

Defendants Wyse and DW Partners participated in the negotiation of the contract and the terms of compensation, e.g. Complaint ¶¶ 13-19, that during negotiations Mr. Wyse made promises on behalf of both DW Partners and Crystal Financial, *id.* ¶ 19, that despite the contract being between Gould and ONE Aviation, all defendants understood Mr. Gould would be working for the benefit of the SSLs and that the SSLs would be controlling operations, *id.* ¶ 21-22, 34, that the contract specifically states that Mr. Gould's "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders," *id.* ¶ 24, that Mr. Wyse and Mr. Buck repeatedly reassured Mr. Gould would be paid his transaction bonus, *id.* ¶ 28, 34-35, that Mr. Gould upheld his part of the bargain, *id.* ¶ 27, and that Defendants breached the contract by failing to pay Mr. Gould. *Id.* ¶¶ 30-31, 37-38.

It is Plaintiff's position that Defendants, through their conduct, were parties to the contract and breached it under *Mark V*. At the bare minimum, however, there is an ambiguity regarding whether Defendants were parties to the contract based on the clause in the contract stating that Mr. Gould's "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders." Compl. ¶ 24. In addition, Mr. Wyse signed the contract, and Mr. Gould's complaint alleges that Mr. Wyse was acting in an unclear role on behalf of the SSLs and the Board of ONE Aviation. Complaint ¶ 25. Therefore, "[t]he court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear." *Mark V, Inc.*, 1993-NMSC-001, ¶ 12. Where "the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder." *Id.* ¶ 12. Mr. Gould has stated a claim for breach of contract against each Defendant.

In the event the court concludes otherwise—a position Mr. Gould does not concede—the Court should grant Mr. Gould leave to amend his complaint to assert a claim for breach of an implied contract. *See Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC,* 2012-NMCA-097, ¶ 18, 287 P.3d 967 ("an implied-in-fact contract may be found based on the representations and conduct of the parties"); *Gormley v. Coca-Cola Enterprises*, 2004-NMCA-021, ¶ 20, 85 P.3d 252, 258–59, *aff'd,* 2005-NMSC-003, ¶ 20, 109 P.3d 280 ("An implied contract may be found in written or oral representations, in the conduct of the parties, or in a combination of representations and conduct.") (citing *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 427–28, 773 P.2d 1231, 1234–35 (1989)). Such an amendment is especially warranted where Mr. Gould has already asserted that Defendants gave him both oral and written representations of a sufficiently explicit and definite nature so as to assert a claim for breach of implied contract. *See Gormley*, 2004-NMCA-021, ¶ 20 ("To support the existence of an implied contract, an oral representation must be sufficiently explicit and definite. A factual showing of additional consideration or mutual assent to the terms of the implied contract is not required.") (citations omitted).

### B. Mr. Gould's Complaint States a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants move to dismiss Mr. Gould's claim of breach of implied covenant of good faith and fair dealing claim on the same basis that they move to dismiss his breach of contract claims: that Defendants are not parties to his employment contract.

The implied covenant of good faith and fair dealing exists in every contractual relationship, and "imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 188 P.3d 1200. "In essence, then, the implied covenant of good faith and fair dealing helps insure that both parties receive the benefit of their respective bargains." *Sanders*,

19

2008-NMSC-040, ¶ 10. "Because the implied covenant of good faith and fair dealing protects the reasonable expectations of the parties arising from an agreement, the covenant requires parties to act in good faith with respect to both ambiguous and unambiguous terms." *Id.* ¶ 27. Evasion of the "spirit of the bargain" or interference with performance may establish a lack of good faith. *Id.* ¶ 9. Finally, under New Mexico law, akin to what is discussed above, "extrinsic evidence" may be "properly used to establish the parties' intent as well as their expectations regarding the benefits that would flow from the agreement." *Id.* ¶ 27.

Mr. Gould signed the employment agreement (and began and continued to work) based on the assurances of Mr. Wyse, purporting to act on behalf of DW Partners and Crystal Financial, and John Buck, acting directly on behalf of DW Partners, that the SSLs would pay his transaction bonus. Additionally, there was also an express provision of the contract (that his funds would be carved out of SSL monies) that Mr. Wyse had a right to rely upon in good faith. While Defendants have the right to contest this understanding of the contract at trial, *id.* ¶ 22 (Defendant at trial "rejected [plaintiff's] view of the contract at trial and put on its own evidence"), Mr. Gould should be allowed to provide "context by showing the circumstances surrounding the making of the contract." *Id.* ¶¶ 25, 26 ("[Plaintiff] used extrinsic evidence to give meaning to the term 'independent contractor,' rather than contradict or override that term, and therefore, that evidence was properly before the jury and subject to use in this manner.").

Mr. Gould has sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing.

### C.  Mr. Gould's Complaint States a Claim for Negligent Misrepresentation

Each Defendant alleges that Mr. Gould's negligent misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standards. ECF 21-1; ECF 20 at 8-9; ECF 22 at 11. However,

Rule 9 does not apply to negligent misrepresentation claims, and it is improper for Defendants to seek dismissal of Mr. Gould's negligent misrepresentation claims on that basis. *City of Raton v. Arkansas River Power Auth.*, 600 F. Supp. 2d 1130, 1143 (D.N.M. 2008) ("the heightened-pleading standard should not apply to negligent-misrepresentation claims," which are grounded in negligence, not fraud); *Two Old Hippies, LLC v. Catch the Bus, LLC,* 784 F. Supp. 2d 1200, 1209 (D.N.M. 2011) (negligent misrepresentation "falls under rule 8(a)'s less stringent pleading standard").

Defendants also allege that Mr. Gould's complaint fails to set forth specific misrepresentations on the part each individual Defendant, and thus, Defendants argue, the complaint fails to allege a plausible claim for negligent misrepresentation and fails to give Defendants adequate notice of the claims under Rule 8. ECF 21-1 at 11; ECF 20 at 7; ECF 22 at 11. Defendants' argument overlooks the definition of material misrepresentation under New Mexico law and the extensive detail asserted in the Complaint.

Under New Mexico state law, a material misrepresentation is defined as "an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely." UJI 13-1632 NMRA. A negligent misrepresentation "is one where the speaker has no reasonable ground for believing that the statement was true." *Id.* The tort "applies to situations in which the defendant 'in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies in correct information 'for the guidance of others in their business transactions.'" Committee Commentary to UJI 13-1632 NMRA (quoting *Stoler v. Hester*, 1978-NMCA-067, ¶ 12, 582 P.3d 403) (in turn quoting Restatement (Second) of Torts § 552 (1977)).

With respect to Defendants Wyse and Wyse Advisors, Mr. Gould's complaint alleges that

Defendant Wyse participated in the negotiation of the contract, Compl. ¶¶ 13, 19-20, knew Mr. Gould "would need a contract that ensures both Crystal Financial and DW Partners guarantee payment for his work," *id.* ¶ 15, signed Mr. Gould's contract containing the negotiated terms, including a provision that "the transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders," *id.* ¶ 24, engaged in a pattern of obscuring the role in which he was acting, *id.* ¶ 25, did so in order to induce Mr. Gould to enter into the contract and perform under it, *id.* ¶¶ 26, 52, and repeatedly assured Mr. Gould that "he would receive the bonus compensation owed to him." *Id.* ¶ 28. Mr. Gould likewise alleges that Mr. Wyse "had no reasonable ground for believing that [his] statements about Plaintiff's compensation were true and intended to leave Mr. Gould "hanging" with respect to his transaction bonus. *Id.* ¶ 55. Mr. Gould has alleged a sufficient basis for a negligent misrepresentation claim against Mr. Wyse and Wyse Advisors.

With respect to DW Partners, Mr. Gould alleges that Mr. Buck of DW Partners participated in the negotiation of his contract, *Id.* ¶¶ 17-18, induced Mr. Gould to give up his demands for a signing bonus for a transaction bonus and to sign and perform under the contract, *id.* ¶¶ 17, 52, was aware of the terms of Gould's contract, including the "carve-out" provision, *id.* ¶¶ 19, 24, regularly ensured Mr. Gould that he would receive the bonus compensation owed, *id.* ¶¶ 28, 51, "had no reasonable grounds for believing that [his] statements about Plaintiff's compensation were true," and "at all material times knew that [Defendants] intended to leave plaintiff 'hanging' and not pay him his transaction bonuses." *Id.* ¶ 54. Mr. Gould has alleged a sufficient basis for a negligent misrepresentation claim against DW Partners.

With respect to Crystal Financial, Mr. Gould alleges that he initially had a consulting agreement with DW Partners and Crystal Financial, *id.* ¶ 12, signed an agreement to be the COO

of ONE Aviation (and Eclipse) due to the desire of DW Partners and Crystal Financial to keep the existing CEO in place in a "purely titular" role but have Mr. Gould run the company, *id.* ¶ 12, that Mr. Wyse made promises on behalf of Crystal Financial regarding the compensation terms of his contract, *id.* ¶ 19, that Mr. Wyse engaged in a pattern and practice of obscuring whether he was acting on behalf of ONE Aviation or Crystal Financial and DW Partners, *id.* ¶ 25, that all Defendants, including Crystal Financial, intended for Mr. Gould to rely on material misrepresentations, *id.* ¶¶ 51-52, and that all Defendants, including Crystal Financial, had no reasonable grounds for believing that the promises about Mr. Gould's compensation were true and intended to leave him "hanging," or unpaid. *Id.* ¶¶ 54-55.

Should the Court find that Mr. Gould has not set forth facts sufficient to alleged negligent misrepresentation against Crystal Financial, Mr. Gould specifically asserted sufficient facts to allege that Mr. Wyse was acting as the agent of Crystal Financial in their dealings in such a manner as to bind Crystal Financial for his actions. Under New Mexico law, a principal is "responsible for the acts of an agent when the principal has clothed the agent with the appearance of authority." *Robertson v. Carmel Builders Real Est.*, 2004-NMCA-056, ¶ 21, 92 P.3d 653. On that point, Mr. Gould has alleged that Mr. Wyse obfuscated his roles for the benefit of Crystal Financial and DW Partners, Compl. ¶¶ 25-26, that all parties, including Crystal Financial, knew that Mr. Gould's "role was to support efforts to secure a buyer for the loans held by the senior secured lenders, for the benefit of the senior secured lenders," *id.* ¶ 21, that all parties, including Crystal Financial, knew that Mr. Gould's transaction bonus would be "carved out of the proceeds available for distribution to the Senior Secured Lenders." *Id.* ¶ 24. To the extent the Court determines the Complaint needs to be amended to specifically assert that Mr. Wyse was acting as an agent for Crystal Financial, Mr. Gould respectfully requests leave to amend.

### D.  Mr. Gould's Complaint States a Claim for Fraud

Defendants overcomplicate Plaintiff's fraud claim in seeking its dismissal under Rules 8 and 9 of the Federal Rules of Civil Procedure. Specifically, Defendants contend that Plaintiff's complaint fails to "'nudge' the fraud claim 'from conceivable to plausible" under Rule 8 under *Twombly*, 550 U.S. at 570, and does not "set forth the who, what, when, where and how of the alleged fraud," under *Two Old Hippies*, 784 F. Supp. 2d at 1208 (D.N.M. 2011). ECF 21-1 at 14; ECF 20 at 10; ECF 22 at 9.

To state a claim for fraud, or fraudulent misrepresentation, Mr. Gould's complaint must allege: (1) a representation of fact was made that was not true, (2) the defendant(s) made the representation knowingly or recklessly, (3) the representation was made with the intent to induce Plaintiff to rely on it, and (4) Plaintiff relied on the misrepresentation. *Encinias v. Whitener L. Firm, P.A.*, 2013-NMSC-045, ¶ 22, 310 P.3d 611.

Not only does Mr. Gould's complaint allege the elements of fraud, Compl. ¶¶ 58-65, it goes into meticulous detail regarding "who, what, when, where, why and how" of the fraudulent scheme. *Two Old Hippies*, 784 F. Supp. 2d at 1208. There is no precise requirement to allege the minute and second when a fraudulent misrepresentation occurred. Instead, the purpose of Rule 9's requirement to plead with particularity is to put defendants "on notice of the allegedly fraudulent conduct so that they can formulate a defense." *Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1334 (D.N.M. 2009).

As discussed above, Plaintiff asserts that Defendants Wyse, acting on behalf of DW and Crystal, John Buck, acting on behalf of DW Partners, and Michael Governali, acting on behalf of Crystal Financial, recruited Mr. Gould to serve as a consultant and, later, executive officer for the purpose of maximizing their gain. Compl. ¶¶ 10-13. Mr. Gould was concerned with how the plan

to take Eclipse/ONE Aviation would impact him and his bonus, which Defendants encouraged be linked to the success of the SSL's. *Id.* ¶ 14. As a result, Mr. Gould "stated that he would need a contract that ensures both Crystal Financial and DW Partners guarantee payment for his work, since Plaintiff's efforts to sell the loans primarily benefited Crystal Financial and DW Partners." *Id.* ¶ 15. Mr. Wyse and Mr. Buck pushed Mr. Gould away from a signing bonus to solely a "success fee." *Id.* ¶¶ 16-18. The success fee was to be paid through a carve-out from Crystal Financial and DW's fees. *Id.* ¶ 19(e). Even though the contract was with Eclipse [or, more accurately, ONE Aviation, the parent company], "all parties understood that Plaintiff's role was to support the efforts to secure a buyer for the loans held by the senior secured lenders, for the benefit of the senior secured lenders." *Id.* ¶ 21.

Mr. Gould relied upon the representations of Defendants, moved to Albuquerque, and began running ONE Aviation. In Albuquerque, both Wyse and Buck continued to reassure Mr. Gould that he would be paid by the SSLs. *Id.* ¶¶ 26, 28. In reality, however, Defendants had no intention of making sure Mr. Gould would be paid, *id.* ¶¶ 25-26, 32, and instead drove ONE Aviation towards and through bankruptcy knowing Mr. Gould would not receive his "transaction bonus." *Id.* ¶ 60, 10, 13.

By claiming a need for more particularity than what is alleged, Defendants would seemingly punish Mr. Gould for their sophistication. Furthermore, while there is a requirement to establish the "who, what, when, where, why and how" of the fraud, as mentioned above, there is no requirement that Mr. Gould must plead it down to the second and minute. That being said, Mr. Gould has supplemented the facts alleged in the complaint with a declaration detailing in even greater detail Defendants conduct – and pinpointing the hour and minute of communications with Defendants where possible. For example, on February 6, 2018, Mr. Gould met in person with Mr.

Wyse, Mr. Buck, and Mr. Wang in Albuquerque, and those individuals reassured him regarding his bonus. Gould Decl. ¶ 16(eee). On February 14, 2018, Mr. Gould spoke with Mr. Wyse by telephone about getting the bonus paid, and Mr. Wyse "assured me John Buck had agreed to it and said he could dig out an email in which Buck stated I would be paid." *Id.* ¶ 16(iii). On February 20, 2018, in a text string beginning at 1:25 p.m., Mr. Wyse texted Mr. Gould that Wyse had spoken with Buck about the getting the bonus paid, and Mr. Buck had said for Mr. Gould not to worry. *Id.* ¶ 16(kkk). There were numerous other, specific communications about making sure Mr. Gould's bonus would be paid despite the impending bankruptcy. *E.g., id.* ¶ 16(ttt). Mr. Buck even reiterated his agreement "with the original intent of [Gould's] employment agreement that as the SSL's realize more gain on their investment, they would share those gains with me." *Id.* ¶ 16(aaaaa).

Mr. Gould asserts that all of those representations were false and were made with the intent to deceive and induce Mr. Gould to rely upon them. *Id.* ¶ 62. The consequence was that Mr. Gould never received the "transaction bonus" to which he is entitled. *Id.* ¶¶ 30, 31, 64. Defendants obviously disagree, and will have a chance to make their case at trial. However, at this stage of the proceedings, all of Mr. Gould's well-pleaded facts must be accepted as true, and he has stated the requisite "time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Midgley v. Rayrock Mines, Inc.,* 374 F.Supp.2d 1039, 1047 (D.N.M.2005) (Browning, J.) (quoting *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997) (internal quotations omitted)).

To the extent the Court determines it is necessary—a point Mr. Gould does not concede—Mr. Gould respectfully requests leave to amend his complaint to allege therein the facts asserted and sworn to in his Declaration.

### E.  Mr. Gould's Complaint States a Claim for Unjust Enrichment

To state a claim for unjust enrichment, Plaintiff must allege: "(1) another has been knowingly benefitted at [plaintiff's] expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 260 P.3d 414 (quoting *Ontiveros Insulation Co. v. Sanchez,* 2000-NMCA-051, ¶ 11, 3 P.3d 695)). Unjust enrichment "is a theory under which an aggrieved party may recover from another party who has profited at the expense of the aggrieved party." *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 20, 144 P.3d 111.

Defendants contend that Mr. Gould's unjust enrichment claim fails because he conferred no benefit upon them and does not "even attempt to allege what he actually did to benefit DW," Crystal or Wyse. ECF 21-1 at 15-16; ECF 20 at 11; ECF 22 at 12. Defendants' contentions are simply not true.

Beyond alleging that "Defendants have knowingly benefited from Plaintiff's efforts," Compl. ¶ 68, Mr. Gould's complaint lays the foundation for the unjust benefit: he alleges that his work on behalf of ONE Aviation "primarily benefited Crystal Financial and DW Partners," *Id.*¶ 15; that Mr. Buck and Mr. Wyse pressured him to agree to a "success fee" that tied his bonus to the amount for which DW and Crystal eventually would sell their debt (the higher their total sale value, the higher Mr. Gould's bonus), *id.* ¶ 17, 19; and that even though Mr. Gould "was to be officially employed by Eclipse, all parties understood that Plaintiff's role was to support efforts to secure a buyer for the loans held by the senior secured lenders, for the benefit of the senior secured lenders." *Id.* ¶ 21. Furthermore, the agreement Mr. Gould ultimately signed indicated that his escalating "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders." *Id.* ¶ 24. The entire point of the success fee was to tie Mr. Gould's bonus

to the ultimate outcome, or benefit, to the SSLs. There is simply no basis to conclude that Mr. Gould's complaint fails to allege a benefit to Defendants DW and Crystal.

In an abundance of caution, however, Mr. Gould details in his Declaration the benefits his efforts provided to all Defendants. DW and Crystal negotiated to have Gould's compensation be "heavily weighted" towards achieving "financial stability" of ONE Aviation and "a profitable buyout of their debt position." Gould Decl. ¶ 9. DW alone expected to sell its debt position for face value, or $42 million, a "tidy profit on its $15 million investment." *Id.* ¶ 3. Furthermore, the "original intent" of Mr. Gould's compensation structure was "that as the SSL's realize more gain on their investment, they would share those gains with me." *Id.* ¶ 16(aaaaa). With respect to Mr. Wyse, Mr. Gould alleges in his Declaration that Mr. Wyse benefitted in three ways from Mr. Gould's work: First, Mr. Wyse would receive continued employment opportunities with John Buck of DW Partners. Second, Mr. Wyse had some kind of incentive pay or bonus. Third, Mr. Wyse received a reputational benefit. *Id.* ¶ 6.

Both DW and Crystal contend that any transactions potentially benefitting them occurred before Mr. Gould signed his contract with ONE Aviation. ECF 21-1 at 16; Crystal ECF 20 at 11. That argument ignores the fact that Mr. Gould began work before an employment agreement was signed and that both DW and Crystal remained actively involved in the company even after Mr. Gould was officially the COO. That argument also ignores the fact that unjust enrichment "has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros Insulation Co., Inc.*, 2000-NMCA-051, ¶ 11.

Finally, Defendant Wyse argues that Mr. Gould cannot assert unjust enrichment where a remedy exists under contract law. Doc. 22 at 13. Wyse's argument conveniently ignores the fact

that all defendants move to dismiss Mr. Gould's breach of contact claims on the basis that they are not parties to Mr. Gould's employment contract. *Id.* at 8-9. It is precisely for these types of situations that unjust enrichment exists as a claim in equity, *see Ontiveros*, *supra*, and the Court should not require Mr. Gould to elect claims and remedies at these initial stages of proceedings.

## V.     CONCLUSION

Despite arguments to the contrary, Defendants purposefully availed themselves of the benefits of orchestrating business in New Mexico, and purposefully directed significant actions at the state to maximize return on their investment. The Court should deny Defendants' motions to dismiss for lack of personal jurisdiction.

In addition, Mr. Gould has made a good faith and thorough effort to allege not just his claims of fraud with particularity, but all of the claims he asserts. Mr. Gould has stated a claim for each of the counts alleged in the Complaint, and the Court should deny Defendants' Rule 12(b)(6) motions, as well.

> FREEDMAN BOYD HOLLANDER
> GOLDBERG URIAS & WARD P.A.
>
>  /s/Josh B. Ewing
> H. Jesse Jacobus
> Josh B. Ewing
> 20 First Plaza, Suite 700
> Albuquerque, NM   87102
> Telephone: (505) 842-9960
> Facsimile: (505) 842-0761
> hjj@fbdlaw.com
> jbe@fbdlaw.com
>
> *Attorneys for Plaintiff*

I HEREBY CERTIFY that on the 7th day of June 2021, I electronically filed the foregoing with the Clerk of Court using CM/ECF system causing service on all parties.

_/s/ Josh B. Ewing_
Josh B. Ewing