IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEVIN GOULD,

    Plaintiff,

v.                                                                                  Case No. 1:19-cv-00382 WJ/JFR

MICHAEL WYSE,
WYSE ADVISORS, LLC,
DW PARTNERS, and
CRYSTAL FINANCIAL,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING CRYSTAL FINANCIAL SBIC LP'S AMENDED MOTION TO DISMISS [DOC. 20]**

THIS MATTER comes before the Court upon a motion from Defendant Crystal Financial SBIC LP ("Crystal LP"). Crystal LP filed a Motion to Dismiss Complaint for Damages on April 26, 2021 (Doc. 20) ("Motion"). Having reviewed the parties' submissions and the applicable law, the Court finds that the Motion is well-taken and therefore **GRANTS** dismissal for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND

*I.    General Background*[1]

Plaintiff is a specialist in leading struggling companies out of distressed financial circumstances. In August 2017, One Aviation/Eclipse Aerospace ("Eclipse") was in dire straits, and two of its senior secured lenders—Crystal LP and DW Partners, LP ("DW Partners")— spoke with Plaintiff about hiring him as a consultant to prepare them for Eclipse's impending bankruptcy. Plaintiff ultimately signed a consulting contract with Crystal LP.

---

[1] Unless otherwise noted, the general background information comes from the Complaint (Doc. 1-1).

In October 2017, Eclipse Board of Directors member Michael Wyse reached out to Plaintiff regarding a chief operating officer ("COO") position with Eclipse. John Buck of DW Partners also corresponded with Plaintiff about the role during this time. Plaintiff alleges that Mr. Wyse made promises on behalf of both DW Partners and Crystal LP regarding salary, a possible signing bonus, and other details of the role. Plaintiff negotiated further with Mr. Wyse, then emailed him on October 17, 2017 that he believed "everything regarding the negotiation was finalized with a few amended requests." Mr. Wyse responded the following day[2] in agreement. On October 23, 2017, Plaintiff moved to Albuquerque and began his tenure as Eclipse's COO despite not yet having a written contract in place "because Defendants indicated that it was important for Plaintiff to begin work on the turnaround right away, and because Plaintiff trusted that Defendants would keep their word regarding the promises they made." *Id.*

The written contract did eventually come to fruition; Plaintiff signed it in November 2017, but it "stated that the employment agreement was made and entered into on October 23, 2017." *Id.* The contract attached to the Complaint was clearly signed by "Mike Wyse" in his capacity as "Board Member." (Doc. 1-2 at 20). Although it did not contain the signing bonus Plaintiff had hoped for, it did state that a "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders." (Doc. 1-1 at 7).

Plaintiff sought companies to purchase the secured loans belonging to Crystal LP and DW Partners. On November 1, 2017, two companies—SFund International Holding Limited ("SFund") and CitiKing International US, LLC ("CitiKing")—purchased 25% of Crystal LP and DW Partners' loans, respectively, for $6,250,000.00 each. *Id.* In January 2018, an airplane was sold for

---

[2] The Court notes what appears to be a typo indicating that Mr. Wyse responded on October 18, 2018 (rather than 2017).

$1,000,000.00, and in July 2018, SFund and CitiKing agreed to purchase the rest of DW Partners' loan for $17,000,000.00.

Plaintiff claims that under the terms of the contract, these transactions entitle him to a bonus of approximately $915,000.00 which has not been paid. To confirm this number, in July 2018, "interim CFO and Financial Advisor Kieran McGarrell" emailed Plaintiff a spreadsheet calculating his bonus and "the DIP[3] budget showing a payment of a bonus going to Plaintiff," indicating that Plaintiff's bonus was $915,000.

Plaintiff has sued Michael Wyse in his individual capacity, Wyse Advisors, DW Partners, and Crystal LP. He asserts five causes of action: breach of contract, breach of the duty of good faith and fair dealing, misrepresentation (intentional or, in the alternative, negligent), fraud, and unjust enrichment. The Complaint often refers to "Defendants" in these causes of action without clarifying which defendant is alleged to have engaged in what conduct. Therefore, for clarity, the Court rules on each of the pending Motions to Dismiss separately to provide individualized attention to the allegations against each defendant.

II.     *Allegations Against Crystal LP*

Plaintiff alleges that Crystal LP is a "senior secured lender of Eclipse and is located in Boston, Massachusetts." Doc. 1-1 at 3. In Count I for breach of contract, Plaintiff alleges that Crystal LP "promised, several times, that Plaintiff would receive the transaction bonus from the senior secured lenders, in exchange for the transactions he oversaw that benefitted the senior

---

[3] The Complaint does not define this acronym, but Plaintiff's Response to the various motions to dismiss defines this acronym as "Debtor-in-Possession," Doc. 47 at 6, which means an entity qualified to file a Chapter 11 bankruptcy petition under the United States Bankruptcy Code. If the Chapter 11 proceeding is a reorganization case and a bankruptcy trustee has not been appointed, then the debtor remains in possession of its assets and can continue to operate.

3

secured lenders." *Id.* at 9. Counts II through V do not reference any specific conduct of Crystal LP. *Id.* at 9–11. Rather, they refer to the conduct of "Defendants" more broadly.

## DISCUSSION

When a court receives a motion to dismiss for lack of personal jurisdiction alongside other issues, such as a motion to dismiss for failure to state a claim, "the court must first determine the jurisdictional issue." *Walker v. THI of N.M. at Hobbs Ctr.*, 801 F. Supp. 2d. 1128, 1140 (D.N.M. 2011) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998)). Crystal LP has moved to dismiss both for lack of personal jurisdiction and for failure to state a claim, so the Court looks first to the jurisdictional question.

### I.     Legal Standard

A plaintiff bears the burden of proving personal jurisdiction over a defendant. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). If "the district court does not hold an evidentiary hearing before dismissing the case, the plaintiff must only make a prima facie showing of personal jurisdiction," by, for example, submitting an affidavit containing "facts that if true would support jurisdiction over the defendant." *Id.* (quotation omitted). When ruling on a motion to dismiss for lack of personal jurisdiction, the court resolves factual disputes in the plaintiff's favor. *OMI Holdings, Inc.*, 149 F.3d at 1091.

For a federal court sitting in diversity, jurisdiction is proper over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"—here, a New Mexico state court. Fed. R. Civ. P. 4(k)(1)(A). New Mexico state courts have jurisdiction to the extent the Fourteenth Amendment permits. *Tercero v. Roman Cath. Diocese of Norwich, Conn.*, 48 P.3d 50, 54 (N.M. 2002). Specifically, a defendant "submits himself" to New Mexico jurisdiction "as to any cause of action arising from," *inter alia*, "the

transaction of any business within this state" and "the commission of a tortious act within this state." N.M.S.A. § 38-1-16(A) (1978). "The question of personal jurisdiction over out-of-state residents involves more" than the technical definitions of these phrases; "[t]he meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy due process." *McManemy v. Roman Cath. Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1199 (D.N.M. 2013) (quoting *Tarango v. Pastrana*, 616 P.2d 440, 441 (N.M. Ct. App. 1980)).

Following this line of inquiry, courts look to the requirements of due process. Due process allows for "personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts" with the state in question "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quotations omitted). Personal jurisdiction may take the form of general jurisdiction, in which a defendant is subject to suit "at home"—a person's state of domicile or a company's state of incorporation or principal place of business. *Id.* at 924. General jurisdiction renders a defendant subject to suit "on causes of action arising from dealings entirely distinct from" its in-state conduct. *Id.* Specific jurisdiction, in contrast, exists when a lawsuit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler A.G. v. Bauman*, 571 U.S. 117, 127 (2014). Even "the commission of some single or occasional acts" in the forum state can subject a defendant to specific jurisdiction in that state in a lawsuit that relates to those acts. *Id.*

## II.    Jurisdiction over Crystal LP

Plaintiff asserts that personal jurisdiction is proper over Crystal LP based on both the actions of Crystal LP's own employees as well as the actions of Mr. Wyse, acting in an obscured role as an agent for Crystal LP. Doc. 47 at 11.

The Court first notes that Plaintiff's conclusory allegations about the supposed agency relationship between Mr. Wyse and Crystal LP do not suffice to plausibly establish an agency relationship. "Agency is a legal concept which depends on the existence of required factual elements the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1252–53 (10th Cir. 2020) (quoting Restatement (Second) of Agency § 1 cmt. b). Simply stating that an agency relationship exists does not make it so. *See Mestas v. CHW Grp., Inc.*, 508 F. Supp. 3d 1011, 1025 (D.N.M. 2020) (conclusory statements alone are insufficient to plausibly establish an agency relationship under Telephone Consumer Protection Act); *Dinero Corp. v. Austin Crude Holding Co., LLC*, 2011 WL 13289826, at *3 (D.N.M. Mar. 31, 2011) (conclusory statements of agency relationship are not enough to survive a motion to dismiss). Plaintiff does not give any indication that Crystal LP authorized Mr. Wyse to act on its behalf beyond simple assertions of Mr. Wyse's "blurred role." *See* Doc. 47 at 11. Therefore, Mr. Wyse's actions have no bearing on whether jurisdiction is proper over Crystal LP.

Regarding the conduct of Crystal LP's actual employees and agents, Plaintiff lists several contacts that he alleges are sufficient to support specific jurisdiction over Crystal LP in New Mexico. Doc. 47 at 12–13, 15.[4] He identifies Crystal LP's consulting contract with him from *before* he took on the Eclipse COO position, Crystal LP's communications with and control of many ONE Aviation operations, Crystal LP's funding of ONE Aviation operations, Crystal LP's awareness of

---

[4] These contacts come from Plaintiff's affidavit, Doc. 28-1. Considering an affidavit outside the complaint converts a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). However, the same is not true of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *See OMI Holdings, Inc*, 149 F.3d at 1091 (stating that when a court rules on a Rule 12(b)(2) motion, a plaintiff must make a prima facie showing of jurisdiction, which may be done by affidavit). Additionally, the Court notes that while Plaintiff has submitted an amended response (Doc. 47) in accordance with the Court's order to clarify (Doc. 38), the declaration attached to the original response (Doc. 28-1) remains valid.

Plaintiff's terms of employment, and Crystal LP's benefit from Plaintiff's actions. None of these connect Crystal LP to the nonpayment of Plaintiff's bonus during his time as COO of Eclipse. Certainly, Crystal LP, as a senior secured lender of Eclipse, was involved in Eclipse's operations and knew about the contractual arrangements of Eclipse's higher-ups. This involvement does not subject Crystal LP to jurisdiction based on a contractual dispute between Plaintiff and Eclipse, a separate matter to which Crystal LP is not a party.

Plaintiff also alleges that Crystal LP participated in hiring negotiations for Plaintiff's Eclipse COO position in New Mexico. Doc. 47 at 15. This argument still misses the mark. Crystal LP did not *hire* Plaintiff for the COO position; it was not a signatory to the contract. Even the statements in Plaintiff's declaration—that Plaintiff spoke with Matt Governali of Crystal LP about his concerns pertaining to the COO position and that DW Partners and Crystal LP "negotiated to have [Plaintiff's] compensation be heavily weighted toward the goals of the [senior secured lenders]"—are too vague to establish that the current lawsuit arises out of those contacts. Doc. 28-1 at 3. The fact that Plaintiff voiced his concerns about the risks of becoming COO of Eclipse to an agent of Crystal LP does not indicate that Crystal LP should be subject to suit when those concerns became reality; the Court cannot claim jurisdiction over Crystal LP for listening. Similarly, Crystal LP's involvement in the negotiations is unclear: with whom did Crystal LP negotiate, Eclipse or Plaintiff? When, and where, and how extensively? Even a contract with a member of the forum state is not always enough; courts still consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287–88 (10th Cir. 2007) (citation omitted). Unlike Plaintiff's allegations regarding Mr. Buck of DW Partners, the unexplained allegations addressing Mr. Governali are too meager to suffice.

### III. Jurisdictional Discovery

Plaintiff seeks leave to conduct jurisdictional discovery. Doc. 47 at 16. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). However, the Tenth Circuit has more recently held that the plaintiff bears "the burden of demonstrating a legal entitlement to jurisdictional discovery." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010). This burden includes demonstrating the "related prejudice flowing from the discovery's denial." *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 103 (10th Cir. 2012). A district court's decision to allow jurisdictional discovery is discretionary; an abuse of discretion occurs if the district court's denial of jurisdictional discovery results in prejudice to the litigant seeking it. *Breakthrough Mgmt. Grp.*, 629 F.3d at 1189.

Plaintiff has made only a cursory request for jurisdictional discovery without providing any indication of the information he seeks. He has not indicated what prejudice might result if he does not receive jurisdictional discovery: that is, he has not informed the Court what "pertinent facts bearing on the question of jurisdiction" may be "controverted" in this matter or "where a more satisfactory showing of the facts" would be "necessary." *Id.* (citation omitted). While he has described some facts that may connect Crystal LP to New Mexico, he has given no indication that this connection relates in any meaningful way to his allegedly unpaid bonus. The lines he has drawn are tenuous at best and cannot support a claim of personal jurisdiction over Crystal LP, and his arguments give no suggestion that jurisdictional discovery will change that.

Therefore, Defendant's Motion [Doc. 20] is **GRANTED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE