## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

KEVIN GOULD,

     Plaintiff,

v.                                      Case No. 1:19-cv-00382 WJ/JFR

MICHAEL WYSE,
WYSE ADVISORS, LLC,
DW PARTNERS, and
CRYSTAL FINANCIAL,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DW PARTNERS' MOTION TO DISMISS [DOC. 21]

THIS MATTER comes before the Court upon a motion from Defendant DW Partners, LP ("DW Partners"). DW Partners filed a Motion to Dismiss Complaint for Damages on April 26, 2021 ("Motion") (Doc. 21) with a supporting memorandum (Doc. 21-1). Having reviewed the parties' submissions and the applicable law, the Court finds that the Motion is well-taken in part. The Court therefore **DENIES** dismissal for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and **GRANTS IN PART** dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## BACKGROUND

### I.   *General Background[1]*

Plaintiff is a specialist in leading struggling companies out of distressed financial circumstances. In August 2017, One Aviation/Eclipse Aerospace ("Eclipse") was in dire straits, and two of its senior secured lenders—Crystal Financial SBIC LP ("Crystal LP") and DW

---

[1] Unless otherwise noted, the general background information comes from the Complaint (Doc. 1-1).

Partners—spoke with Plaintiff about hiring him as a consultant to prepare them for Eclipse's impending bankruptcy. Plaintiff ultimately signed a consulting contract with Crystal LP.

In October 2017, Eclipse Board of Directors member Michael Wyse reached out to Plaintiff regarding a chief operating officer ("COO") position with Eclipse. John Buck of DW Partners also corresponded with Plaintiff about the role during this time. Plaintiff alleges that Mr. Wyse made promises on behalf of both DW Partners and Crystal LP regarding salary, a possible signing bonus, and other details of the role. Plaintiff negotiated further with Mr. Wyse, then emailed him on October 17, 2017 that he believed "everything regarding the negotiation was finalized with a few amended requests." Mr. Wyse responded the following day[2] in agreement. On October 23, 2017, Plaintiff moved to Albuquerque and began his tenure as Eclipse's COO despite not yet having a written contract in place "because Defendants indicated that it was important for Plaintiff to begin work on the turnaround right away, and because Plaintiff trusted that Defendants would keep their word regarding the promises they made." *Id.*

The written contract did eventually come to fruition; Plaintiff signed it in November 2017, but it "stated that the employment agreement was made and entered into on October 23, 2017." *Id.* The contract attached to the Complaint was clearly signed by "Mike Wyse" in his capacity as "Board Member." Doc. 1-2 at 20. Although it did not contain the signing bonus Plaintiff had hoped for, it did state that a "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders." Doc. 1-1 at 7.

Plaintiff sought companies to purchase the secured loans belonging to Crystal LP and DW Partners. On November 1, 2017, two companies—SFund International Holding Limited ("SFund") and CitiKing International US, LLC ("CitiKing")—purchased 25% of Crystal LP and DW

---

[2] The Court notes what appears to be a typo indicating that Wyse responded on October 18, 2018 (rather than 2017).

Partners' loans, respectively, for $6,250,000.00 each. *Id.* In January 2018, an airplane was sold for $1,000,000.00, and in July 2018, SFund and CitiKing agreed to purchase the rest of DW Partners' loan for $17,000,000.00.

Plaintiff claims that under the terms of the contract, these transactions entitle him to a bonus of approximately $915,000.00 which has not been paid. To confirm this number, in July 2018, "interim CFO and Financial Advisor Kieran McGarrell" emailed Plaintiff a spreadsheet calculating his bonus and "the DIP[3] budget showing a payment of a bonus going to Plaintiff," indicating that Plaintiff's bonus was $915,000.

Plaintiff has sued Michael Wyse in his individual capacity, Wyse Advisors, DW Partners, and Crystal LP. He asserts five causes of action: breach of contract, breach of the duty of good faith and fair dealing, misrepresentation (intentional or, in the alternative, negligent), fraud, and unjust enrichment. The Complaint often refers to "Defendants" in these causes of action without clarifying which defendant is alleged to have engaged in what conduct. Therefore, for clarity, the Court rules on each of the pending Motions to Dismiss separately to provide individualized attention to the allegations against each defendant.

## II.    *Allegations Against DW Partners*

Plaintiff alleges that DW Partners is a "senior secured lender of Eclipse and is located in New York, New York." Doc. 1-1 at 3. In Count I for breach of contract, Plaintiff alleges that DW Partners "promised, several times, that Plaintiff would receive the transaction bonus from the senior secured lenders, in exchange for the transactions he oversaw that benefitted the senior

---

[3] The Complaint does not define this acronym, but Plaintiff's Response to the various motions to dismiss defines this acronym as "Debtor-in-Possession," Doc. 47 at 6, which means an entity qualified to file a Chapter 11 bankruptcy petition under the United States Bankruptcy Code. If the Chapter 11 proceeding is a reorganization case and a bankruptcy trustee has not been appointed, then the debtor remains in possession of its assets and can continue to operate.

secured lenders." *Id.* at 9. Counts II through V do not reference any specific conduct of DW

Partners. *Id.* at 9–11. Rather, they refer to the conduct of "Defendants" more broadly.

## DISCUSSION

When a court receives a motion to dismiss for lack of personal jurisdiction alongside other

issues, such as a motion to dismiss for failure to state a claim, "the court must first determine the

jurisdictional issue." *Walker v. THI of N.M. at Hobbs Ctr.*, 801 F. Supp. 2d. 1128, 1140 (D.N.M.

2011) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir.

1998)). DW Partners has moved to dismiss both for lack of personal jurisdiction and for failure to

state a claim, so the Court looks first to the jurisdictional question.

### I.      Personal Jurisdiction

#### *A.  Legal Standard*

A plaintiff bears the burden of proving personal jurisdiction over a defendant. *Melea, Ltd.*

*v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). If "the district court does not hold an

evidentiary hearing before dismissing the case, the plaintiff must only make a prima facie showing

of personal jurisdiction," by, for example, submitting an affidavit containing "facts that if true

would support jurisdiction over the defendant." *Id.* (quotation omitted).  When ruling on a motion

to dismiss for lack of personal jurisdiction, the court resolves factual disputes in the plaintiff's

favor. *OMI Holdings, Inc.*, 149 F.3d at 1091.

For a federal court sitting in diversity, jurisdiction is proper over a defendant "who is

subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

located"—here, a New Mexico state court. Fed. R. Civ. P. 4(k)(1)(A). New Mexico state courts

have jurisdiction to the extent the Fourteenth Amendment permits. *Tercero v. Roman Cath.*

*Diocese of Norwich, Conn.*, 48 P.3d 50, 54 (N.M. 2002). Specifically, a defendant "submits

himself" to New Mexico jurisdiction "as to any cause of action arising from," *inter alia*, "the transaction of any business within this state" and "the commission of a tortious act within this state." N.M.S.A. § 38-1-16(A) (1978). "The question of personal jurisdiction over out-of-state residents involves more" than the technical definitions of these phrases; "[t]he meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy due process." *McManemy v. Roman Cath. Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1199 (D.N.M. 2013) (quoting *Tarango v. Pastrana*, 616 P.2d 440, 441 (N.M. Ct. App. 1980)).

Following this line of inquiry, courts look to the requirements of due process. Due process allows for "personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts" with the state in question "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quotations omitted). Personal jurisdiction may take the form of general jurisdiction, in which a defendant is subject to suit "at home"—a person's state of domicile or a company's state of incorporation or principal place of business. *Id.* at 924. General jurisdiction renders a defendant subject to suit "on causes of action arising from dealings entirely distinct from" its in-state conduct. *Id.* Specific jurisdiction, in contrast, exists when a lawsuit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler A.G. v. Bauman*, 571 U.S. 117, 127 (2014). Even "the commission of some single or occasional acts" in the forum state can subject a defendant to specific jurisdiction in that state in a lawsuit that relates to those acts. *Id.*

When determining specific jurisdiction in a case arising out of a contractual dispute, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established

minimum contacts with the forum." *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1358 (10th Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

   *B.  Jurisdiction over DW Partners*

   The Court first notes that Plaintiff's conclusory allegations about the supposed agency relationship between Mr. Wyse and DW Partners do not suffice to plausibly establish an agency relationship. "Agency is a legal concept which depends on the existence of required factual elements the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1252–53 (10th Cir. 2020) (quoting Restatement (Second) of Agency § 1 cmt. b). Simply stating that an agency relationship exists does not make it so. *See Mestas v. CHW Grp., Inc.*, 508 F. Supp. 3d 1011, 1025 (D.N.M. 2020) (conclusory statements alone are insufficient to plausibly establish an agency relationship under Telephone Consumer Protection Act); *Dinero Corp. v. Austin Crude Holding Co., LLC*, 2011 WL 13289826, at *3 (D.N.M. Mar. 31, 2011) (conclusory statements of agency relationship are not enough to survive a motion to dismiss). Plaintiff does not give any indication that DW Partners authorized Mr. Wyse to act on its behalf beyond simple assertions of Mr. Wyse's "blurred role." *See* Doc. 47 at 11. Therefore, Mr. Wyse's actions have no bearing on whether jurisdiction is proper over DW Partners.

   Regarding the actions of DW Partners and its actual agents, Plaintiff asserts that John Buck, a Managing Principal at DW Partners, was personally involved in negotiating Plaintiff's Eclipse COO contract. Doc. 1-1 at 5. Early in the negotiating process, Plaintiff communicated, "It is going to be a very tough job with substantial risks at almost every step of the way," to which Mr. Buck responded, "I agree but [w]e don't have the cash to pay a signing bonus." *Id.* Mr. Buck texted

6

Plaintiff, "Pigs get fat. Hogs get slaughtered. Signing bonus wont [sic] fly[,]" a few days later that the signing bonus was "a big ask[,]" and that Plaintiff was being "penny wise and pound foolish" for attempting to obtain a signing bonus. *Id.* Plaintiff therefore alleges sufficient facts to demonstrate that Mr. Buck participated actively in the negotiations for Plaintiff's Eclipse COO position.

Beyond negotiations, Plaintiff also alleges that Mr. Buck continued to communicate with Plaintiff about payment of the bonus. His declaration states that on March 2, 2018, at 8:00 am, Mr. Buck spoke with Plaintiff by phone "regarding the calculation of [Plaintiff's] bonus amount and suggesting different methods by which it might be paid" and that Mr. Buck followed up with Plaintiff while speaking with Mr. Wyse about the same. Doc. 28-1 at 19, ¶ 16(nnn). Further, Plaintiff alleges that on June 22, 2018, at 8:00 am, Mr. Buck spoke with Plaintiff and "stated he agreed with the original intent of [Plaintiff's] employment agreement that as the [senior secured lenders] realize more gain on their investment, they would share those gains with [Plaintiff]. [Mr. Buck] stated the key to [Plaintiff] getting paid was Mike Wyse, and that [Plaintiff] should convince [Mr. Wyse] that [Plaintiff was] willing to quit unless [Plaintiff was] paid." *Id.* at 27, ¶ 16(aaaaa). By speaking to the intent behind the contractual language, Mr. Buck suggests that he was privy to the creation of the employment agreement, and his continued discussion of the matter afterward solidifies his involvement.

The contract itself is intimately tied to New Mexico. Eclipse is located in Albuquerque. Doc. 1-2 at 11. The contract's place of performance is listed as New Mexico. *Id.* at 13. Disputes arising out of the contract are to be governed by New Mexico law. *Id.* at 19. Plaintiff states that he signed the contract "[a]fter moving to New Mexico[.]" Doc. 1-1 at 6, ¶ 24. It is, in short, a New Mexico contract which Mr. Buck took an active part in negotiating.

While DW Partners is not a party to the contract, determination of personal jurisdiction is not a "mechanical" test. *Burger King Corp.*, 471 U.S. at 478 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). DW Partners was involved through its managing principal Mr. Buck in both negotiations prior to the formation of the Eclipse COO contract and subsequent discussions about implementing that agreement. Because this case arises out of that very agreement, DW Partners' involvement is sufficient to establish personal jurisdiction.

## II.      Motion to Dismiss for Failure to State a Claim

### A.  Legal Standard

Rule 12(b)(6) allows a party to move to dismiss a case for failure to state a claim upon which relief can be granted. When ruling on such a motion, a court accepts "all well-pleaded factual allegations in the complaint" and construes them "in the light most favorable" to the plaintiff. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1305 (10th Cir. 2020). However, a court need not accept "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the plaintiff must put forth facts stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plausibility is not the same as probability, it is more than a "sheer possibility." *Id.*

Rule 9(b) requires a heightened pleading standard for claims involving fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[,]" but states of mind such as knowledge or malice may be pled generally. Fed. R. Civ. P. 9(b). A plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).

### B.  Count I: Breach of Contract

DW Partners argues that Plaintiff's breach of contract claim must fail because he fails to allege that DW Partners is a party to the contract. Doc. 21-1 at 8. "[T]he existence of a valid and binding contract" is an element that a plaintiff must establish for a breach of contract claim. *Ormrod v. Hubbard Broad., Inc.*, 328 F. Supp. 3d 1215, 1227 (D.N.M. 2018). Generally speaking,[4] "a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

Plaintiff argues that DW Partners *is* a party to the contract, or at least, that the contract is ambiguous as to whether DW Partners is a party because it references that Plaintiff's bonus will be "carved-out from the proceeds available for distribution to the Senior Secured Lenders." Doc. 1-1 at 7; Doc. 47 at 17–18.

Black's Law Dictionary defines a contract as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary (11th ed. 2019). It defines a party as "[s]omeone who takes part in a transaction," and uses the example, "a party to the contract." *Id.* The Employment Agreement at issue in this case begins as follows:

> This Employment Agreement ("Agreement") is made and entered into as of the 23rd day of October, 2017 (the "Effective Date") by and between OAC Management Inc. (the "Company") and Kevin Gould ("Employee").

Doc. 1-2 at 11. These are the parties to the contract: the entities who take part in the transaction, "intending to be legally bound." *Id.* These are the signatories: Kevin Gould as Employee and Mike Wyse as board member of ONE Aviation Corporation. *Id.* at 20. Certainly, the contract refers to the Senior Secured Lenders. *Id.* at 12. However, just because a contract references a person or entity does not make the person or entity a party; a contract does not

---

[4] State law does permit enforcement of a contract by or against nonparties though certain mechanisms, such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). However, Plaintiff references none of these in his briefing.

automatically cast contractual obligations upon anyone mentioned. *See Sedillo Elec. v. Colo. Cas. Ins. Co.*, No. 1:15-cv-01172, 2016 WL 7437151, at *3–4 (D.N.M. Apr. 21, 2016).

Plaintiff cites *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, 845 P.2d 1232, in an attempt to evade this significant issue on the contract's face. He argues that New Mexico law "allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity" and that this contract was ambiguous for a variety of reasons. Doc. 47 at 17 (quoting *Mark V*, 845 P.2d at 1236). The contextual factors Plaintiff lists include that DW Partners participated in the negotiation of the contract, that Mr. Wyse acted on DW Partners' behalf during negotiations, that "all defendants understood" that Plaintiff's work was for the senior secured lenders' benefit and that the senior secured lenders would control operations, the contractual language referencing the lenders, that Mr. Buck of DW Partners reassured Plaintiff about his transaction bonus, that Plaintiff performed, and that DW Partners breached the contract by failing to pay Plaintiff. Doc. 47 at 17–18. The Court has already rejected the argument regarding Mr. Wyse above as well as the fact that the contract refers to the senior secured lenders, Plaintiff's performance is irrelevant to whether DW Partners is an intended party to the contract, and DW Partners' purported breach is a starkly conclusory allegation.

Regarding the other points—that DW Partners participated in negotiations, that Plaintiff's work was for DW Partners' benefit and under DW Partners' control, and that Mr. Buck reassured Plaintiff about his transaction bonus—these do not establish that DW Partners is a *party* to the contract. Certainly, Plaintiff's allegations taken as true establish that DW Partners was closely involved in the creation of the contract, but if Plaintiff had wanted a contract with DW Partners, he easily could have negotiated for one or refused to sign a contract that did not have DW Partners

as a party. His allegations make clear that he is a strong businessman, but at the end of the day, he signed a contract that contained straightforward terms, and he must abide by them.

Indeed, the contract is not "ambiguous"—that is, "reasonably and fairly susceptible of different constructions," *Mark V*, 845 P.2d at 1237—as to whether the senior secured lenders are parties. The contract clearly states that it is between OAC Management Corporation and Plaintiff, and only those two parties signed it. Furthermore, pertaining to the allegedly ambiguous language, the contract states that "the Company shall compensate Employee" by paying him, among other compensation, his transaction bonus "carved-out from proceeds available for distribution to the Senior Secured Lenders." Doc. 1-2 at 11–12. This language imposes no obligation upon the Senior Secured Lenders; it is the Company, ONE Aviation, which accepts the legal obligation to pay this bonus under the specified terms. The parties to the contract are unambiguous.

Plaintiff seeks to amend his complaint to assert a claim for breach of an implied contract. An implied contract is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC*, 287 P.3d 967, 971 (N.M. Ct. App. 2012) (citing *Hercules, Inc. v. U.S.*, 516 U.S. 417, 424 (1996)). The Complaint does not allege any conduct on the part of DW Partners that would indicate such a tacit understanding. *See generally* Doc. 1-1. In fact, when Plaintiff discussed his lack of a bonus with Mr. Buck, Mr. Buck advised him to persuade Mr. Wyse—the signatory to the contract as a board member of Eclipse—to pay the bonus. Doc. 28-1 at 27, ¶ 16(aaaaa).[5] This is not the behavior of an individual who has a tacit understanding of himself or the entity he

---

[5] When considering whether amendment would be futile, a court may look beyond the pleadings. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997). In the portion of this Memorandum Opinion and Order ruling on the 12(b)(6) motion, the Court considers the declaration only for the purpose of determining whether amendment is futile.

represents as party to an implied agreement. Therefore, amending to add this new claim would be futile because the alleged facts do not support it. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (leave to amend is futile, and therefore need not be granted, if claims would be subject to dismissal after amendment).

### C.  Count II: Breach of Duty of Good Faith and Fair Dealing

DW Partners seeks to dismiss Count II because, as in Count I, DW Partners is not a party to the contract. The implied covenant of good faith and fair dealing is "enforceable only between parties to the contract." *Bank of Am. NA v. Quintana*, 2014 WL 809199, at *8 (N.M. Feb. 27, 2014) (citing *Sanders v. FedEx Ground Package Sys., Inc.*, 2008–NMSC–040, ¶ 10, 188 P.3d 1200); *see also Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 309 (N.M. 1994) ("[E]very contract in New Mexico imposes the duty of good faith and fair dealing *upon the parties* in the performance and enforcement of a contract.") (emphasis added). Because DW Partners is not a party to the contract, it cannot breach a duty of good faith and fair dealing.

### D.  Count III: Negligent Misrepresentation

DW Partners seeks to dismiss Count III because the Complaint does not allege any negligent misrepresentation that DW Partners made to Plaintiff. In the section devoted to Count III, the Complaint gives only the examples of "failing to disclose Mr. Wyse's capacity when promises were made" and "the repeated promise that Plaintiff would receive the transaction bonus from the senior secured lenders, in exchange for the transactions he oversaw and helped secure for the benefit of Defendants." Doc. 1-1 at 9, ¶¶ 50–51. Plaintiff lists various interactions with Mr. Buck, including that he participated in contract negotiations, induced Plaintiff to give up a signing bonus in favor of a transaction bonus, knew the terms of Plaintiff's contract, assured Plaintiff that he would receive his bonus, had no reasonable grounds to believe such statements were true, and

knew that the various defendants did not intend to pay the bonus. Doc. 47 at 22 (citing Doc. 1-1 at ¶¶ 17, 18, 52, 19, 24, 28, 51, and 54, in order). In short, Plaintiff alleges that Mr. Buck negotiated for Plaintiff to receive a bonus that Mr. Buck knew would not materialize, and that Mr. Buck's repeated reassurances served as negligent misrepresentations. *Id.*

DW Partners argues that the Complaint is too vague and fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires fraud to be pled with particularity. However, as Plaintiff observes, this heightened pleading standard does not apply to negligent misrepresentation claims. *See City of Raton v. Ark. River Power Auth.*, 600 F. Supp. 2d 1130, 1143 (D.N.M. 2008); *Suttman-Villars v. Argon Med. Devices, Inc.*, --- F. Supp. 3d ---, 2021 WL 3489572, at \*10 (D.N.M. 2021); *but see Heaton v. Am. Brokers Conduit*, 496 F. App'x 873, 876 (10th Cir. 2012) (unpublished) (perceiving no error when a district court found that plaintiff failed to plead negligent misrepresentation claim with particularity as required by Rule 9(b)).

Nevertheless, even under the ordinary pleading standard of *Twombly* and *Iqbal*, the Complaint's allegations of misrepresentation do not suffice. The Court has already addressed the lack of support for the assertion that Mr. Wyse acted on behalf of DW Partners. The assertion that Mr. Buck knew the terms of Plaintiff's contract, too, relies upon Plaintiff's unfounded agency theory between DW Partners and Mr. Wyse. *See* Doc. 47 at 22 (citing Doc. 1-1 at 4–5, ¶¶ 19, 24). Even looking past this flaw, the Complaint addresses Mr. Buck's (and DW Partners') purported reassurances only in a cursory manner. It states that a few months into his tenure as COO, Plaintiff "regularly received calls and texts from both Buck and Wyse ensuring that he would receive the bonus compensation owed to him." Doc. 1-1 at 7, ¶ 28. But the Complaint does not reference a date, time, or location for any of these supposedly regular calls, and it gives only the barest indication of their content. Considering that content *is* the alleged misrepresentation, pleading only

a single sentence leaves much to be desired. Later portions of the Complaint, *see generally* Doc. 1-1 at 9–10, ¶¶ 50–57, refer only to the conduct of "Defendants" without differentiation, a problematic pleading structure under Rule 8. *See Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008). This scant reference to reassurances from Mr. Buck, combined with a vague recitation of the elements of negligent misrepresentation that refers to the defendants collectively, is insufficient to put DW Partners on notice of the claims against it and the grounds upon which they rest. *See Twombly*, 550 U.S. at 545.

Plaintiff's Declaration provides more substance, but the Court may not look beyond the pleadings without converting the motion to dismiss into a motion for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Plaintiff seeks to amend his Complaint to incorporate the facts to which he has sworn in his Declaration, Doc. 47 at 27, and Rule 15(a)(2) indicates that leave to amend should be freely granted. Accordingly, the Court will allow Plaintiff to amend to plead more specific facts regarding DW Partners for Count III.

E. *Count IV: Fraud*[6]

Fraud and intentional misrepresentation trigger Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b). For the reasons stated in the previous section regarding lack of specificity in pleading DW Partners' fraudulent or misrepresentative statements, the Complaint fails to meet even the ordinary standard, let alone the heightened standard. Count IV is therefore dismissed, and to the extent Count III pleads intentional misrepresentation, it is also dismissed.

However, amendment to incorporate that Declaration would not resolve the deficiencies in Count IV (fraud). Plaintiff's fraud allegations are specifically that "Defendants" defrauded Plaintiff through untrue representations and omissions "in order to induce him to sign a written

---

[6] To the extent that Count III pleads intentional (rather than negligent) misrepresentation, the first paragraph of this section applies to Count III as well.

contract with Eclipse." Doc. 1-1 at 10, ¶ 59. That is, while the misrepresentation arguments of Count III focus on statements Mr. Buck made both before and after Plaintiff signed the contract, Plaintiff's Count IV fraud arguments focus only on conduct that could have induced him to sign the contract—*i.e.*, conduct during the negotiations period. But the Declaration contains no indication that DW Partners or Mr. Buck said or did anything untrue during the negotiation process that would induce Plaintiff to sign the contract. On the contrary, the Declaration states that Mr. Buck negotiated with Plaintiff to take a transaction bonus rather than a signing bonus because "we don't have cash to pay a signing bonus." Doc. 28-1 at 10, ¶ 16(u). This statement, and the other similar statements by Mr. Buck during the negotiating process, *id.*, do not plausibly allege any material misstatements of fact or omissions.

To underscore the above: Plaintiff was hired because of his experience rescuing financially distressed companies, and Eclipse's impending bankruptcy was a topic of discussion with Plaintiff well before he negotiated the COO role. *See id.* ¶¶ 3 ("By the summer of 2017, however, ONE Aviation had begun to run out of money and faced declining revenues."), 8 (DW Partners and other defendants "engaged in numerous telephone discussions with [Plaintiff] regarding the problems Eclipse Aerospace was facing, [Plaintiff's] ideas for operating and rescuing the company, and offering their own ideas for how [Plaintiff] should operate the company" before and during the negotiations period), 16(b) (August 8, 2017 phone call with Mr. Buck in which he "described Eclipse and ONE Aviation's financial problems"); 16(i) (August 16, 2017 phone call with Crystal LP representative Mr. Governali about Eclipse's impending bankruptcy), 16(m) (September 20, 2017 conversation with Mr. Buck and others about plans to operate the company while in bankruptcy). Plaintiff's grievance is that DW Partners negotiated for Plaintiff to receive his bonus in a form which DW Partners knew would never materialize, but the facts in Plaintiff's declaration

indicate that the defendants were all quite candid about the dire financial straits and impending bankruptcy Eclipse faced. The Declaration does not plausibly refer to any intentionally or recklessly false statements made to induce Plaintiff to sign the Eclipse COO contract. Therefore, amending to add specificity to Count IV would be futile.

  *F. Count V: Unjust Enrichment*

  Plaintiff asserts a claim for unjust enrichment against "Defendants" because he "helped procure buyers for the senior secured lenders' loans to Eclipse" and that Defendants "knowingly benefitted" from those efforts. Doc. 1-1 at 12. DW Partners argues that Plaintiff's assertions of the actual actions he took to benefit DW Partners are too vague. Doc. 21-1 at 15–16.

  Under New Mexico law, unjust enrichment has two elements: that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000).

  Plaintiff alleges that his work consisted of "supporting efforts to find companies to purchase the secured loans from Crystal Financial and DW Partners" and that he did so for a cumulative transaction total of over thirty million dollars. Doc. 1-1 at 6, ¶ 27. Taking his allegations as true, it is a natural inference that selling DW Partners' loans benefits DW Partners. *See Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) (when ruling on motion to dismiss, court draws all reasonable inferences in favor of non-moving party). Additionally, he alleges that it would be unjust because Plaintiff never received the bonus compensation to which this work should have entitled him. Doc. 1-1 at 11. At this stage in the litigation, such allegations are sufficient to establish a claim of unjust enrichment.

**CONCLUSION**

16

The Court has personal jurisdiction over DW Partners and therefore the motion to dismiss for lack of personal jurisdiction is **DENIED**. DW Partners' motion to dismiss for failure to state a claim is **GRANTED** as to Counts I, II, and IV. Count III (intentional and/or negligent misrepresentation) is inadequate as pled but may be amended with the information in the Declaration. The motion to dismiss is **DENIED** as to Count V. When amending his Complaint, Plaintiff may not attempt to revive Counts I, II, and IV and Plaintiff's Amended Complaint shall be filed within **TWO WEEKS** of the entry of this Order.

    **IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE