IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KEVIN GOULD**,

      Plaintiff,

v.                                                                                                                                                   No. 1:19-CV-00382-WJ-JFR

**DW PARTNERS LP**,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT DW PARTNERS' 12(B)(7) MOTION TO DISMISS

Plaintiff Kevin Gould ("Plaintiff") originally filed suit against Michael Wyse; Wyse Advisors, LLC; DW Partners LP; and Crystal Financial. **Doc. 1-1**. The dispute involved Plaintiff's employment as Chief Operating Officer ("COO") of One Aviation / Eclipse Aerospace. **Doc. 55 at 1, 7–8**. After a series of motions to dismiss, this Court granted dismissal without prejudice based on lack of personal jurisdiction against Michael Wyse and Wyse Advisors (**Doc. 51**) as well as against Crystal Financial (**Doc. 53**). Plaintiff appealed these dismissals. **Doc. 70**. This Court then stayed the action pending the outcome of Plaintiff's appeal. **Doc. 103**. On August 28, 2023, the Tenth Circuit affirmed this Court's orders dismissing the above-mentioned defendants. **Doc. 104-1**. As Plaintiff's appeal is resolved, the Court grants Plaintiff's Motion to Lift Stay (**Doc. 105**) and lifts the current stay in accordance with its prior Memorandum Opinion and Order Granting Defendant DW Partners, LP's Motion to Stay Proceedings (**Doc. 103**).

Now before the Court are the following motions: **(1)** Defendant DW Partners, LP's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 (**Doc. 59**) and **(2)** Plaintiff Kevin Gould's Motion to Strike Defendant's Untimely Reply

1

(**Doc. 90**). Having reviewed the parties' submissions and the applicable law, the Court **DENIES** both motions (**Docs. 59 & 90**) as set forth below.

## BACKGROUND

Plaintiff is a specialist leading struggling companies out of distressed financial circumstances. **Doc. 55** ("**Complaint**"). In August 2017, One Aviation/Eclipse Aerospace ("Eclipse") was in dire straits, and two of its senior secured lenders ("SSLs") – Crystal Financial SBIC LP ("Crystal Financial") and DW Partners LP ("DW") – spoke with Plaintiff about hiring him as a consultant to prepare them for Eclipse's impending bankruptcy. *Id.* ¶ 11. As negotiations progressed, however, Crystal Financial and Defendant DW asked Plaintiff to become Chief Operating Officer ("COO") of Eclipse. *Id.* ¶ 16. Plaintiff agreed to assume the COO role and began negotiating the terms of his contract. According to Plaintiff, it was clear from the outset of negotiations that Defendant DW and Crystal Financial sought to have Plaintiff's compensation tied to the goals of the SSLs – namely achieving a profitable buyout of their interest in Eclipse. *Id.* ¶ 14.

During negotiations, Plaintiff spoke with John Buck Managing Principal of DW. *Id.* ¶ 12. Plaintiff's focus in negotiations was securing payment for his work in the event Eclipse entered Chapter 11 Bankruptcy. *Id.* ¶ 18. As a result, Plaintiff requested that both Crystal Financial and Defendant DW guarantee payment for his work, since Plaintiff's work would primarily benefit them. *Id.* Plaintiff initially requested a $100,000 signing bonus as well as a 5% transaction bonus in addition to his yearly salary. *Id.* However, in response to these compensation demands, John Buck texted Plaintiff, "Pigs get fat. Hogs get slaughtered. Signing bonus won't fly." A few text messages later, Buck said: "That is a big ask." *Id.* ¶ 21.

Plaintiff eventually agreed to forego a signing bonus for a transaction bonus. On October 17, 2017, he emailed Michael Wyse, a member of the Board of Directors of Eclipse, that he believed "everything regarding the negotiation was finalized with a few amended requests." *Id.* ¶ 25. On October 23, 2017, despite the absence of a written contract, Plaintiff moved to Albuquerque and began working as Eclipse's COO. *Id.* ¶ 30.

The written contract did eventually come to fruition; Plaintiff signed it in November 2017. Although the contract did not contain the signing bonus Plaintiff had hoped for, it did state that a "transaction bonus will be carved-out from the proceeds available for distribution to the Senior Secured Lenders." *Id.*

While working as COO, Plaintiff actively sought out buyers for the SSLs' interest in Eclipse, expecting to receive a transaction bonus for his efforts. *Id.* ¶ 34. On November 1, 2017, two companies—SFund International Holding Limited ("SFund") and CitiKing International US, LLC ("CitiKing")—purchased 25% of Crystal Financial and Defendant DW's interests in Eclipse, respectively, for $6,250,000.00 each. *Id.* In January 2018, Eclipse sold an airplane for $1,000,000.00, and in July 2018, SFund and CitiKing agreed to purchase the rest of Defendant DW's interest in Eclipse for $17,000,000.00. *Id.* After these transactions, interim CFO and Financial Advisor of Eclipse, Kieran McGarrell emailed Plaintiff a spreadsheet calculating his transaction bonus and "the DIP3 budget showing a bonus going to Plaintiff," indicating that Plaintiff's bonus was $915,000. *Id.* ¶ 36.

Several months into working as COO, Plaintiff raised concerns that he had yet to receive his transaction bonus. *Id.* ¶ 35. In response to Plaintiff's concerns, John Buck and Michael Wyse regularly called and texted Plaintiff to ensure him that he would receive the transaction bonus owed to him. To date he has not received any form of payment towards his bonus. *Id.*

Based on these facts, Plaintiff alleges misrepresentation and unjust enrichment claims against Defendant DW. Plaintiff further alleges that he suffered the following damages as a result of Defendant DW's misrepresentations: (1) consequential damages, (2) the loss of the transactional bonus of $915,000, (3) expenses related to relocating to Albuquerque, and (4) emotional distress. *Id.* ¶ 49.

## DISCUSSION

As noted above, there are two motions before the Court: (1) Defendant DW's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(7) and 19 (**Doc. 59**) and (2) Plaintiff Kevin Gould's Motion to Strike Defendant DW's Untimely Reply (**Doc. 90**).

As a preliminary matter, the Court denies Plaintiff's Motion to Strike (**Doc. 90**), as Plaintiff is not legally harmed by Defendant DW's late Reply. Moreover, Defendant DW's delay is attributable to a reasonable misunderstanding. After Plaintiff filed his appeal, the Tenth Circuit asked the parties participate in a global mediation. **Doc. 93 at 2**. Around the same time, this Court also asked the parties to participate in a mediation. *Id.* Given that the parties would be participating in two mediations over an eight-week period, they discussed staying briefing on Defendant DW's Motion to Dismiss. **Doc 93 at 3**. Following this discussion, Defendant DW believed it could file its Reply after the parties completed mediation and acted accordingly. *Id.* While Defendant DW's misunderstanding was reasonable, the Court cautions Defendant DW to adhere to the local rules and fully expects it to do so. Accordingly, the Court proceeds to evaluate Defendant DW's 12(b)(7) Motion to Dismiss, considering all relevant documents, including Defendant DW's Reply (**Doc. 83**).

In Defendant DW's 12(b)(7) Motion to Dismiss, it asks the Court to dismiss all Plaintiff's claims against it because Plaintiff failed to join a required and indispensable party, or, in the alternative, to order Plaintiff to join the required party. **Doc. 59 at 3**. Defendant DW identifies

4

DWC Pine Investments I, Ltd. ("Pine Investments") as the absent and required party. **Doc. 59 at 2**. Defendant DW claims Pine Investments is a required party because it was the actual SSL to Eclipse, not DW. *Id.* In support of this position, Defendant DW submitted an affidavit by its general counsel Houdin Honarvar, affirming that DW was never an SSL to Eclipse, never owned interest in Eclipse, and never received proceeds from the sale of any interest in Eclipse. **Doc. 59-2**.

I. **Legal Standard:**

Rule 12(b)(7) permits a court to dismiss a claim for failure to join a party in accordance with Rule 19. As the proponent of the 12(b)(7) motion, Defendant "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (internal citation omitted). Defendant's burden can be satisfied by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* (internal citation omitted).

When evaluating a motion under Rule 12(b)(7), the Court initially determines if the absent party is a required party to be joined under Rule 19(a)(1).[1] Rule 19(a)(1) states: A party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject

---

[1] Earlier caselaw describes parties who should be joined under rule 19(a) as necessary parties. However, the 2007 amendments changed the term "necessary parties" to "required parties." Fed. R. Civ. P. 19. To track the language of the rule, the Court uses "required party."

>to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the Court cannot feasibly join an otherwise required party because the party is not subject to service of process or because its joinder would destroy subject-matter jurisdiction, the Court must then decide if the party is indispensable. To do this, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). To make this determination, the Court considers the following factors:

>(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
>(2) the extent to which any prejudice could be lessened or avoided;
>
>(3) whether a judgment rendered in the person's absence would be adequate; and
>
>(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

## II. Pine Investments is not a Required Party under Rule 19(a)(1):

Defendant DW claims that Pine Investments is a required party for two reasons. First Defendant DW argues that Pine Investments "has an interest relating to the subject matter of the action – namely the alleged liability of the SSLs to Plaintiff." **Doc. 83 at 4**. And, according to Defendant DW, proceeding without Pine Investments will impair or impede its ability to protect this interest. *Id.* Second, Defendant DW argues that this Court cannot accord complete relief among the existing parties in Pine Investments' absence. **Doc. 59-1 at 4–5**.

First, the Court notes that Defendant DW misunderstands Rule 19(a)(1)(B) to require joinder if the absent party *has* an interest relating to the subject of the action. This is incorrect. Under Rule 19(a)(1)(B), a required party is a party that *claims* an interest relating to the subject of

6

the action. Thus, the absent party must be the one claiming the interest. Here, Defendant DW does not assert that Pine Investments claims an interest relating to the subject of the action nor has Pine Investments itself made such a claim. Since there is no evidence that Pine Investments *claims* any interest relating to the subject of this action, Pine Investments is not a required party under Rule 19(a)(1)(B).

Since 19(a)(1)(B) does not apply, the Court moves now to 19(a)(1)(A) – whether the Court can accord complete relief among the existing parties in Pine Investments' absence. To clarify, the relief sought by Plaintiff includes the loss of his transactional bonus of $915,000. Defendant DW contends that the Court cannot award Plaintiff this $915,000 in Pine Investments' absence because Defendant DW did not receive proceeds from the sale of the SSLs' interests in Eclipse. **Doc. 59-1 at 4**. Put simply, Defendant DW argues that it cannot pay Plaintiff money it never received.

Defendant DW's argument, however, fails to consider a critical distinction: the difference between seeking a specific fund and seeking a specific amount. If Plaintiff were specifically seeking $915,000 taken from proceeds from the sale of the SSLs' interests in Eclipse, and Defendant DW never received any of those proceeds, providing complete relief in Pine Investments' absence might indeed be challenging. However, this scenario does not exist in the present action.

In the present action, Plaintiff seeks *an* amount of $915,000 for the loss of his transactional bonus not tied to any specific fund. This means that the source of the $915,000 is irrelevant: this amount can come from any funds controlled by Defendant DW. Therefore, it is immaterial, in the context of the Court providing complete relief, whether Defendant DW ever received proceeds from the sale of the SSL's interests in Eclipse.[2] If Plaintiff succeeds, Defendant DW is fully

---

[2] The Court acknowledges that Plaintiff is not likely to succeed on his unjust enrichment claim if Defendant DW did not receive proceeds from the sale of the SSLs' interest in Eclipse. However, this does not impact the Court's ability

capable of paying Plaintiff the amount he seeks. Consequently, the Court finds no impediment to providing complete relief among the existing parties in Pine Investments' absence.

For the reasons stated above, Pine Investments is not a required party under Rule 19(a)(1). Thus, the Court need not address the "feasibility" of joinder or whether Pine Investments is indispensable.[3]

## CONCLUSION

In sum, Pine Investments is not a required party because it neither asserts an interest related to the subject of the action nor is its joinder necessary for the Court to provide complete relief among the existing parties. Accordingly, the Court **GRANTS** Plaintiff's Motion to Lift Stay (**Doc. 105**) and **DENIES** Defendant DW's 12(b)(7) Motion to Dismiss (**Doc. 59**).

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

to provide complete relief among the existing parties. This is because the key inquiry under Rule 19(a)(1)(A) is not whether the plaintiff will succeed, but rather, if the plaintiff does succeed, whether he or she can obtain complete relief. In this action, Plaintiff can indeed obtain complete relief if he is successful.

[3] Plaintiff claims that DW held itself out as one in the same with Pine Investments. **Doc. 71 at 2**. Defendant DW contends that it was a management company and Pine Investments and DW are completely separate entities. **Doc. 59-2 at 1, Doc. 83 at 2**. In Defendant DW's Reply, Defendant DW notes that Plaintiff has not asked the Court to pierce the corporate veil. **Doc. 83 at 3**. The Court agrees that Plaintiff has made no such request and, therefore, does not address that issue in this Memorandum Opinion and Order.